**A. Z. ABDUC, etc., Petitioner,**

v.

**Stoney R. LANE, etc., Respondent.**

**No. CIV-2-78-13.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

March 13, 1978.

On Rebuttal Hearing March 22, 1978.

---

William L. Guy, Mountain City, Tenn., for petitioner.

Linda Ross Butts, Asst. Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This applicant for the federal writ of habeas corpus, a Negro, complains that he was tried, convicted and is incarcerated by the respondent under an indictment returned by a grand jury constituted exclusively of white persons and as to which there was substantial underrepresentation of Negroes and black persons resulting from purposeful discrimination. It was determined factually after a hearing on the merits of this issue on November 9, 1968 in *State of Tennessee v. George Steward*, nos. 2283, 4 in the Circuit Court of Cocke County, Tennessee, that there was no discrimination against Negroes or blacks as jurors in the criminal court in which Mr. Abduc, aka Mr. George Steward, was convicted. This Court must now review the sufficiency of the evidence therein to support such factual determination. 28 U.S.C. § 2254(d)(8).

Mr. Steward established therein a prima facie case of intentional discrimination against Negroes and black persons in the selection of grand jurors of such county. He showed that only one (and, under a generous view of the evidence, no more than 3 Negroes or black persons) of an aggregate of 444 persons had been called and served on such grand juries for the 11½ years preceding (and including the time of) the indictment of him. It was stipulated therein that 3% of the general population of such county comprised Negroes and black persons who were eligible for jury service. As our Circuit Judge Peck has pointed-out:

\* \* \* \* \* \*

The method of establishing a prima facie case of intentional discrimination is \* \* \* well-established when, as here, the alleged discrimination is aimed at

blacks. If over a significant period of time there exists a substantial disparity between the proportion of blacks in the general population, and the proportion called to serve as grand jurors, and the selection procedure affords an opportunity to discriminate or is not racially neutral, then the [applicant] has made out a prima facie case * * *. [Footnote references omitted.]

*Mitchell v. Rose,* C.A. 6th (1978), 570 F.2d 129, 133–134[6]. The showing made by the applicant shifted the burden, therefore, to the state of Tennessee to dispel the inference of intentional discrimination. *Castaneda v. Partida* (1977), 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498, 511[10].

■ The meager evidence adduced by the state of Tennessee in the foregoing hearing, in the effort to rebut the prima facie case of the applicant, consisted of self-serving protestations of court officials involved in the process of grand jury selection and administration, that racial considerations played no part in the selections. The circuit court clerk of the county testified that she had seen " * * * no indication * * *" that Negroes and black persons were discriminated against in the matter of service upon the grand juries of the county (although it was she who testified also that only 1 of 444 grand jurors who had served for the preceding decade was a Negro or black person). A member of the county's jury commission testified that it was agreed 6 years earlier by its members that no racial or color discrimination would be practiced in the jury selection process; that no racial or color distinction was indulged in placing names on the jury lists; and that no person whose name had been drawn from those lists was ever rejected for grand jury service because of the race or color of that drawee. The rebutting testimony of those two witnesses, to the effect that racial considerations played no part in the selection of grand jurors in the county, was simply protestations and insufficient to rebut the prima facie case of discrimination. *Ibid.,* 430 U.S. at 498, 97 S.Ct. at 1282, 51 L.Ed.2d at 513, n. 19[13b].

The jury commissioner testified in addition that he and the other member of the jury commission depended exclusively upon its third member, Mr. Charles Runnion, Sr., who was deceased at the time of that hearing, to place on the jury lists the names of Negro and black citizens. All three of the commissioners were under " * * * the affirmative duty to supplement the jury lists by going out into the county and personally acquainting themselves with other citizens of the county whenever the jury lists in existence [did] not fairly represent a cross-section of the county's upright and intelligent citizens. [Footnote reference omitted.] * * *" *Turner v. Fouche* (1970), 396 U.S. 346, 355, 90 S.Ct. 532, 537, 24 L.Ed.2d 567, 576. (This Court expresses no opinion as to the validity of the other commissioners' attempted discharge of their obligations through a fellow-commissioner.)

Except as stated above, through reconstruction of the commentary of the state hearing judge in overruling Mr. Steward's challenge of the grand jury array, see *Townsend v. Sain* (1963), 372 U.S. 293, 313–314, 83 S.Ct. 745, 9 L.Ed.2d 770, 786, no express findings were made by him on the merits of the applicant's claim. On appeal, it was concluded merely that " * * * the evidence on the plea in abatement [the procedural device which provided the vehicle for the aforementioned hearing in the lower court] is insufficient to show that there was a systematic, purposeful and deliberate exclusion of members of the defendant's [applicant's] race, in the selection and drawing of the Grand Jury. * * *" *George Steward,* plaintiff-in-error, v. *State of Tennessee,* defendant-in-error, no. 9 in the Court of Criminal Appeals of Tennessee, opinion of December 31, 1969, certiorari denied by Supreme Court of Tennessee on May 4, 1970. It thus appears that the state courts may have misconceived the proper manner of applying the applicant's federal constitutional right in this instance. Particularly, there appears to have been no consideration given by the lower or appellate courts to the fact that the burden of dispelling the inference of intentional discrimination in the selection of grand jurors

weighed upon the state of Tennessee, rather than upon the applicant.

As has been directed in such circumstances:

\* \* \* \* \* \*

\* \* \* Fundamental to the concept of the federal writ [of habeas corpus] as \* \* \* authorized by [the] Congress is that the petitioner will be accorded an adjudication by a federal court of the constitutional issues, provided he makes out a prima facie case, has exhausted his state remedies, and has not without reasons deliberately by-passed a controlling state court rule or procedure. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Henry v. Mississippi*, 379 U.S. 443, 452, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). If he meets these conditions, a federal determination of the constitutional issues is mandated. Although a federal district judge may consider and give weight to the state court's adjudication, ". . . State adjudication of questions of law cannot, under the habeas corpus statute, be accepted as binding. *It is precisely these questions that the federal judge is commanded to decide.* . . . Although there is no need for the federal judge, if he could, to shut his eyes to the State consideration of such issues, no binding weight is to be attached to the State determination. The congressional requirement is greater. The State court cannot have the last say when it, though on fair consideration and what procedurally may be deemed fairness, may have misconstrued a federal constitutional right." *Brown v. Allen*, 344 U.S. 443, 506, 508, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1953) (concurring opinion of Justice Frankfurter) (emphases supplied; fn. omitted). These principles were reaffirmed by the Supreme Court in *Townsend v. Sain* \* \* \* [*supra*] \* \* \*, where Chief Justice Warren, speaking for the court, stated:

"Although the district judge may, where the state court has reliably found the relevant facts, defer to its findings of fact, he may not defer to its findings of law. It is the district judge's duty to apply the applicable federal law to the state court fact findings independently. The state conclusions of law may not be given binding weight on habeas."

(372 U.S. at 318, 83 S.Ct. at 760)

*United States ex rel. Radich v. Criminal Ct. of City of N. Y.*, C.A. 2d (1972), 459 F.2d 745, 748–749[2, 3], certiorari denied (1973), 409 U.S. 1115, 93 S.Ct. 893, 34 L.Ed.2d 698.

This Court is unable to say, on a consideration of the sketchy record before it, of the relevant state proceeding, that the factual determination, that there was no discrimination against Negroes and blacks in the selection of grand jurors in Cocke County, Tennessee in November, 1968, is fairly supported by such record. See 28 U.S.C. § 2254(d)(8). The testimony of the jury commissioner and the (unsworn) comments of the circuit court judge, that prospective grand jurors were not included or excluded from the jury lists because of race or color, " \* \* \* did not suffice to overcome \* \* \* " the applicant's prima facie case. *Turner v. Fouche, supra*, 396 U.S. at 361, 90 S.Ct. at 540, 24 L.Ed.2d at 579[6].

■ This is not to be understood as implying that this Court has concluded that Mr. Steward was denied equal protection of the law in the selection of the grand jury which indicted him. Rather, it is to state that, although it was presented to them, there has been no adjudication by the state courts under correct principles of law as to whether the applicant was so deprived; and this judge in the federal system is commanded to hear the full undisclosed facts and dispose of that issue as law and justice require. 28 U.S.C. § 2243.

There were unpursued statements in the state court record by the circuit court clerk that Negroes and black persons may have been included in the jury venires but were excused from actual service for proper cause by the presiding judge. There were statements, de hors the testimonial record, by the presiding judge that he had excused

persons in this identifiable group because of their employment problems. But, apart from this, the state of Tennessee has offered no explanation whatever for the fact that only 1 or 3 blacks have been called for service on the grand juries of Cocke County in more than a decade, when substantial representation of that color and race would have suggested that a minimum of 13 or 14 would have been called.

The state of Tennessee must fill this vacuum, by moving in with sufficient evidence to dispel the prima facie case of intentional discrimination which Mr. Steward has made. *Ibid.*, 396 U.S. at 361, 92 S.Ct. at 540, 24 L.Ed.2d at 579. Undoubtedly, " * * * [t]here are many possible circumstances which, if they exist here, might account lawfully for the observed disparity. The suggestion of their possible existence is not enough, however. * * * " *Stephens v. Cox*, C.A. 4th (1971), 449 F.2d 657, 661. The affirmation of the jury commissioner and the unsworn statements of the presiding judge " * * * of good faith in making individual selections [of grand jurors] are insufficient to dispel a prima facie case of systematic exclusion * * * " whether the resulting discrimination was a conscious decision on the part of any individual jury commissioner or merely a course of conduct which operated to discriminate in the selection of jury venires on racial grounds. *Alexander v. Louisiana* (1972), 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536, 543[6, 7].

■ The applicant, proceeding herein *pro se* as a person unable financially to obtain representation, and the interests of justice so requiring, 18 U.S.C. § 3006A(g), William L. Guy, Esq. of the Mountain City, Tennessee bar, hereby is appointed discretionarily to provide representation to the applicant, with payment therefor to be as provided in 18 U.S.C. §§ 3006A(d), (e). The Court will conduct an evidentiary hearing herein, limited to the issue of any rebuttal of the aforementioned prima facie case,* to commence at 10:00 o'clock, a. m., Thursday, March 23, 1978. The clerk will issue an appropriate habeas corpus *ad testificandum* to the respondent, after consultation with the applicant's counsel to ascertain for what period of time in advance of such hearing the applicant's presence is desired within this jurisdiction, to obtain the applicant's presence at such hearing.

Other matters hereby are

RESERVED.

### ON REBUTTAL HEARING

This Court conducted an evidentiary hearing on March 23, 1978 on the application of the petitioner Mr. Abduc for the federal writ of habeas corpus. See memorandum opinion and order herein of March 13, 1978. The applicant was present thereat in person and through appointed counsel. The respondent was represented by an assistant Attorney General of Tennessee.

It was stipulated that the United States Census of 1970 would fairly reflect the black general population of Cocke County, Tennessee in November, 1968. The respondent exhibited an excerpt therefrom, reflecting that black persons constituted 2.76% of such general population at that time.

It had been stipulated in *State of Tennessee v. George Steward*, nos. 2283, 4 in the Circuit Court of Cocke County, Tennessee, that approximately ½ of the Negro and black population of such county would have been eligible at the pertinent times for jury service therein. It was shown therein also that 444 persons had served as grand jurors of such county in the period 11½ years prior to and including November 9, 1968, when the indictment was returned against Mr. Abduc as a result of which he is now incarcerated.

---

* This Court hereby FINDS from the facts reconstructed from the record of the aforementioned hearing of November 9, 1968 that, under the applicable federal law, the applicant established a prima facie case of intentional discrimination against Negroes and black persons in the selection of grand jurors of Cocke County, Tennessee. Accordingly, the hearing before this Court will proceed from that point, with the state of Tennessee bearing the burden of rebutting such prima facie case.

■ There was testimony before this Court that the jury commissioners' list of prospective jurors contained 2,000 names, and that in the aforementioned 11½ years an estimated 20 or 30 Negroes and black persons had served on the grand juries of Cocke County, Tennessee. This was well above the 1.38% of black persons in the general population of the county who were eligible in that period for jury service. From this evidence and the entire record, this Court hereby

FINDS that, over the significant period of time before the applicant Mr. Abduc was indicted, there did not exist in such county a substantial disparity between the proportion of blacks in the general population and the proportion called to serve as grand jurors; and, accordingly, that the state of Tennessee, through the respondent, has rebutted successfully the prima facie case developed herein, that the jury commissioners of such county, in the period prior to and including 1968, intentionally discriminated against black persons in the selection of grand jurors for that county. See and *cf. Mitchell v. Rose, supra.*

For such reason, the petitioner Mr. A. Z. Abduc, also known as George Steward, hereby is DENIED all relief. Rule 58(1), Federal Rules of Civil Procedure. Should the applicant give timely notice of an appeal from the judgment to be entered herein, he is authorized to proceed on such appeal in forma pauperis. Rule 24(a), Federal Rules of Appellate Procedure. Any such notice will be treated also as an application for a certificate of probable cause. Rule 22(b), Federal Rules of Appellate Procedure.

■ As this Court cannot say that the claim of the applicant is plainly frivolous, and as it constitutes a substantial question worthy of further consideration, *Ex Parte Farrell*, C.A. 1st (1951), 189 F.2d 540, 543[1], certiorari denied *sub nom. Farrell v. O'Brien* (1951), 342 U.S. 839, 72 S.Ct. 64, 96 L.Ed. 634, such certificate will ISSUE in that event. *Idem.*

