**A. Z. ABDUL f/k/a George Steward, Petitioner-Appellant,**

v.

**Stoney R. LANE, Warden, Respondent-Appellee.**

**No. 78–1221.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 8, 1978.

Decided December 28, 1978.

William L. Guy, Wilson & Wilson, Mountain City, Tenn., for petitioner-appellant.

Brooks McLemore, Atty. Gen. of Tennessee, Linda Ross Butts, Asst. Atty. Gen., Nashville, Tenn., for respondent-appellee.

Before PHILLIPS, Chief Judge, and LIVELY and ENGEL, Circuit Judges.

PER CURIAM.

A. Z. Abdul, formerly known as George Stewart, an inmate at Brushy Mountain Prison in Tennessee, appeals from the denial of his application for a writ of habeas corpus. The appeal was submitted on briefs without oral argument by stipulation of the parties.

Appellant, a Negro, was convicted January 27, 1969, of the offense of rape and was sentenced by the State Circuit Court for Cocke County at Newport, Tennessee, to 30 years imprisonment. Prior to trial, a plea in abatement was filed, in which appellant sought dismissal of the indictment on the

ground of systematic exclusion of Negroes from the grand jury which indicted him. After an evidentiary hearing, the State trial judge determined there was no racial discrimination in the selection of the grand jury. The Tennessee Court of Criminal Appeals affirmed and the Supreme Court of Tennessee denied certiorari.

Upon the filing of the petition for federal habeas corpus, District Judge Charles G. Neese concluded that petitioner had made a prima facie case. He, therefore, appointed counsel for petitioner and conducted a thorough evidentiary hearing. Judge Neese recognized the rules to be applied in cases charging grand jury discrimination, as recently enunciated by this court in *Mitchell v. Rose*, 570 F.2d 129, 133 (6th Cir. 1978):

> The fundamental rules to be applied in cases charging grand jury discrimination are well established. For almost a century it has been settled law that if a state chooses to use grand juries to return indictments, the jurors must be selected without discrimination because of race or color. In 1879, in its landmark trilogy of cases establishing the right of blacks to serve on juries and grand juries, and the right of every accused citizen to an indictment by a grand jury selected without discrimination, the Supreme Court pointed out:
>
>> It is not easy to comprehend how it can be said that while every white man is entitled to a trial by a jury . . . selected without discrimination against his color, and a negro is not, the latter is equally protected by the law with the former. Is not protection of life and liberty against race or color prejudice a right, a legal right, under the constitutional amendment? And how can it be maintained that compelling a colored man to submit to a trial for his life by a jury drawn from a panel from which the State has expressly excluded every man of his race, because of color alone, however well qualified in other respects, is not a denial to him of equal legal protection?
>
> *Strauder v. West Virginia*, 100 U.S. 303, 309, 25 L.Ed. 664 (1879). Substantial un-

derrepresentation, as a result of purposeful discrimination, is as much a constitutional violation as total exclusion. *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970).

Based upon the evidence, the district court made findings of fact that, over a significant period before the indictment of appellant, there did not exist in Cocke County, Tennessee, a substantial disparity between the proportion of Negroes in the general population and the proportion called to serve as grand jurors. The district court also found that the jury commissioners of the county, in the period prior to and including 1968, did not discriminate against Negroes in the selection of grand jurors.

Judge Neese made the following specific findings of fact:

> It was stipulated that the United States Census of 1970 would fairly reflect the black general population of Cocke County, Tennessee in November, 1968. The respondent exhibited an excerpt therefrom, reflecting that black persons constituted 2.76% of such general population at that time.
>
> It had been stipulated in *State of Tennessee v. George Stewart*, nos. 283, 4 in the Circuit Court of Cocke County, Tennessee, that approximately ½ of the Negro and black population of such county would have been eligible at the pertinent times for jury service therein. It was shown therein also that 444 persons had served as grand jurors of such county in the period 11½ years prior to and including November 9, 1968, when the indictment was returned against Mr. Abdul as a result of which he is now incarcerated.
>
> There was testimony before this Court that the jury commissioners' list of prospective jurors contained 2,000 names, and that in the aforementioned 11½ years an estimated 20 or 30 Negroes and black persons had served on the grand juries of Cocke County, Tennessee. This was well above the 1.38% of black persons in the

general population of the county who were eligible in that period for jury service.

The record demonstrates that the findings of fact of the district court are not clearly erroneous, Fed.R.Civ.P. 52(a), but to the contrary, they are supported by substantial evidence. A former jury commissioner, who served throughout the 1960 decade, testified that he and the other two jury commissioners made sure there were names of Negroes in the jury box at all times. He further stated there were 2,000 names in the jury box at a time and that it contained the names of 100 or more Negroes. The evidence demonstrates there was no difference in the physical appearance of the name cards in the jury box and the cards contained no racial designations. Furthermore, there was no indication of race on the voter registration lists, which were used as one source of grand jury names.

We conclude that the decision of the district court is fully supported by the record.

Affirmed.