Danny Herring was indicted and tried for murder in the Circuit Court of the First Judicial District of Hinds County, Mississippi, Honorable William F. Coleman, presiding. The jury returned a guilty verdict of manslaughter and the trial judge sentenced Herring to a term of eighteen (18) years in the Mississippi State Penitentiary. He appeals and assigns the following errors in the trial below: *Page 785 
(1) The trial court erred in overruling appellant's motion to quash the indictment, venire and panel.
(2) The trial court erred in overruling appellant's motion to extend the trial proceeding into the next succeeding day so as to allow appellant additional time in which to locate an indispensible witness.
(3) The trial court erred in admitting pictures into evidence over the objection of appellant and further erred in admitting testimony pursuant thereto.
(4) The verdict of the jury is contrary to the overwhelming weight of the evidence.
 I.
Appellant first contends that the trial court erred in overruling his motion to quash the indictment, venire and panel. The motion was heard upon stipulation by the State and the appellant, that the 1970 Census figures show, for persons twenty-one (21) years of age and over in Hinds County, total population to be 121,265; total number of non-whites to be 39,870; total number of whites to be 81,395; and total number of females to be 66,752. The 1960 Census figures show, for said persons, total population to be 103,974; total number of non-whites to be 26,138; total number of whites to be 67,386; and total number of females to be 56,287 (we do not vouch for the accuracy of the Census figures). For the past thirteen (13) years, grand juries were called in the First Judicial District of Hinds County and a different foreman was selected by the trial judge during each of those terms for a total of thirty-nine (39) grand jury foremen. The grand jury foreman selected for the March 1978 Term of court was James H. Russell, a white male person, and he was foreman of the Fortieth Grand Jury in consecutive order. From March, 1965 through March, 1978, none of the grand jury foremen were members of the black race, although there have been three (3) white forewomen. The composition of the grand juries by race and sex was not indicated.
The duties of a grand jury are set out in Mississippi Code Annotated Sections 13-5-45 and 13-5-47 (1972). The only authority of the foreman above that of the other grand jurors is the power to order subpoenas for witnesses desired to be produced and the power to swear witnesses [Mississippi Code Annotated Section13-5-63 (1972)]. In addition, the law requires that all indictments must be presented to the court by the grand jury foreman with his name endorsed thereon [Mississippi Code Annotated Section 99-7-9 (1972)]. As a matter of common practice, any member of the grand jury may request the issuance of subpoenas and may call for any information or investigation authorized by law.
Appellant has not attempted to attack the makeup of, or the manner of selecting, the grand jury, nor does he contend that the grand jury was selected in an unconstitutional and discriminatory manner. The motion went to the sole proposition that the indictment was void because black foremen (forewomen) were systematically excluded in such capacity on the grand jury, and that females were likewise excluded.
Appellant cites Mitchell v. Rose, 570 F.2d 129 (6th Cir. 1978) [cert. granted to U.S. Supreme Court], a Tennessee case, which held that the appellant Mitchell established a prima facie case of racial discrimination in the appointment of grand jury foremen and forewomen, since the evidence showed that no black foremen or forewomen had ever been selected and in view of the trial judge's admission that he "never really gave any thought" to appointing black foremen or forewomen of the grand jury.
Tennessee uses the "key-man" system of jury selection, relying on three jury commissioners, appointed by the trial judge, to select a pool of prospective grand jurors from the general population. Every two years the commissioners meet to select names from the tax records and permanent registration records of the county, or other available and reliable sources. The number of names is determined by the judge. The names are recorded officially in a jury list book, then written on cards, sealed in a box, *Page 786 
and drawn as needed for jury service. The same list serves as jury pool for both grand and petit jurors.
In Mitchell v. Rose, supra, at 135, the Sixth Circuit Court of Appeals said:
 "The position is filled by the trial judge from the general population, thus affording ample opportunity for discrimination, whether conscious or unconscious. While discrimination must be `intended,' officials who select grand jurors must be considered to have intended the natural results which flow from their conduct . . ."
The method of jury selection in Mississippi is known as the "random" method, which differs from that of Tennessee. Mississippi Code Annotated Section 13-5-2 (Supp. 1978) provides the following:
 "It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity in accordance with this chapter to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose. A citizen shall not be excluded from jury service in this state on account of race, color, religion, sex, national origin, or economic status."
In Mississippi, a jury commission is established in each county by the appointment of three (3) commissioners for four-year terms, one member each being appointed by the circuit judge, the chancery judge, and the board of supervisors of said county. The jury commission compiles and maintains a master list consisting of the voter registration lists of the county. From the master list, a certain number of prospective jurors, as provided by Section 13-5-10, Mississippi Code Annotated (1972), are selected and placed in the jury wheel. They are selected by the jury commission at random from the master list in the following manner:
 "The total number of names on the master list shall be divided by the number of names to be placed in the jury wheel; the whole number nearest the quotient shall be the `key number,' except that the key number shall never be less than two (2). A `starting number' for making the selection shall then be determined by a random method from the number from one (1) to the key number, both inclusive. The required number of names shall then be selected from the master list by taking in order the first name on the master list corresponding to the starting number and then successively the names appearing in the master list at intervals equal to the key number, recommencing if necessary at the start of the list until the required number of names has been selected. . . ." Miss. Code Ann. § 13-5-12 (Supp. 1978).
Prior to the term of court where jurors are required, upon order of the court, a private citizen, who does not have an interest in a case pending trial and who is not a practicing attorney, publicly draws at random from the jury wheel the names or identifying numbers of as many prospective jurors as the court by order requires. Mississippi Code Annotated Section 13-5-16
(Supp. 1978).
Formerly, when court convened, names of jurors selected from each supervisor's district were drawn in open court from five (5) separate boxes or compartments representing those districts. Under the present system, district lines are obliterated, and, upon direction of the trial judge, the clerk draws the required number of grand jurors [usually eighteen (18)] from one (1) box containing all names of prospective jurors for the week. After the grand jurors are so selected, the trial judge is required by Mississippi Code Annotated Section 13-5-45 (1972) to appoint a member of the grand jury to be foreman. When appointed, the foreman is administered the statutory oath and the other grand jurors are administered an oath that they will be bound by the same oath taken by the foreman.
Thus, in Mississippi (unlike Tennessee) the grand jury foreman is appointed from a selection method, which, from the very inception, has been a random process and non-discriminatory. No attack has *Page 787 
been made upon the constitutionality of that selection method. InMitchell v. Rose, supra, at 134, the Court of Appeals stated:
 "While the facial constitutionality of the key man system has been upheld, it has been frequently recognized as a method particularly subject to abuse, and therefore subject to close scrutiny by the courts. We note, as has the Supreme Court on numerous occasions, that random selection methods similar to the federal system would avoid most of the potential for abuse found in the key man system, and would probably eliminate challenges such as the State of Tennessee faces here." 570 F.2d at 134, fn. 5.
In Rose v. Mitchell, ___ U.S. ___, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979) [Cert. granted from the Sixth Circuit Court of Appeals], reversing the Sixth Circuit Court of Appeals, the United States Supreme Court held that the respondents had not made out a prima facie case of discrimination in the selection of grand jury foremen. Their case was supported by the recollections of the trial judge, the testimony of three (3) jury commissioners and the testimony of three (3) former foremen. The jury commissioners gave no testimony relating to foremen of the grand jury, to the method of selecting foremen or to the race of past foremen. Thus, respondents' prima facie case as to discrimination rested entirely on the testimony of the three foremen, which did not establish the respondents' case. The Court said:
 "Most important, there was no evidence as to the total number of foremen appointed by the judges in Tipton County during the critical period of time. Absent such evidence, it is difficult to say that the number of Negroes appointed foreman, even if zero, is statistically so significant as to make out a case of discrimination under the `rule of exclusion.' The only testimony in the record concerning Negro population of the county was to the effect that it was approximately 30%. App. 11. Given the fact that any foreman was not limited in the number of two-year terms he could serve, and given the inclination on the part of the judge to reappoint, it is likely that during the period in question only a few persons in actual number served as foremen of the grand jury. If the number was small enough, the disparity between the ratio of Negroes chosen to be foreman to the total number of foremen, and the ratio of Negroes to the total population of the county, might not be `sufficiently large [that] it is unlikely that [this disparity] is due solely to chance or accident.' Castaneda v. Partida, 430 U.S. [482,] at 494 n. 13 [97 S.Ct. 1272, 51 L.Ed.2d 498.] Inasmuch as there is no evidence in the record of the number of foremen appointed, it is not possible to perform the calculations and comparisons needed to permit a court to conclude that a statistical case of discrimination had been made out, id., at 496-497, n. 17, 97 S.Ct. 1272, and proof under the `rule of exclusion' fails." ___ U.S. at ___-___, 99 S.Ct. at 3008.
In the present case, the stipulation as to ratio in black and white population covered the period from 1960 through 1970 (Census). The Mississippi Jury Selection Act became effective January 1, 1975. Discussing the effect of a new method of jury selection, insofar as discrimination is concerned, the United States Supreme Court held in Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), that past attitude does not control the action of officials by the present fact of colored citizens' names in the jury box and said:
 "In Vance County, where the special venire for Speller's trial was drawn, the names of substantial numbers of Negroes appeared thereafter in the jury box. 145 Negroes out of a total of 2,126 names were in this jury box. As this venire was the first drawing of jurors from the box after its purge in July 1949, following the new statute and Brunson v. State of North Carolina, 333 U.S. 851, 68 S.Ct. 634, 92 L.Ed. 1132, decided here, March 15, 1948, the long history of alleged discrimination against its Negro citizens by Vance County jury commissioners is not decisive of discrimination in the present case. Former errors cannot invalidate *Page 788 
future trials. Our problem is whether this venire was drawn from a jury box, invalidly filled as to Speller because names were selected by discriminating against Negroes `solely on account of race and/or color.' It is this particular box that is decisive cf. Cassell v. State of Texas, 339 U.S. 282, 290 and 295, 70 S.Ct. 629, 633, 635, 94 L.Ed. 839. Past practice is evidence of past attitude of mind. That attitude is shown to no longer control the action of officials by the present fact of colored citizens' names in the jury box." 344 U.S. at 479, 73 S.Ct. at 418-419, 97 L.Ed. at 500-501.
There is no stipulation or proof in the record which indicates the ratio of whites to non-whites since 1970 and particularly from January 1, 1975, the effective date of the Mississippi Jury Selection Act. Neither is there any stipulation or proof as to the number of foremen on grand juries in the First Judicial District of Hinds County since January 1, 1975, nor is there any stipulation or proof as to the composition of the grand jury (whites and non-whites) which indicted appellant. The members of that particular grand jury all may have been white. We are of the opinion that appellant has failed to make out a prima facie case of discrimination in the selection of the grand jury foreman.
We incline to the logic of Mr. Justice Stewart with whom Mr. Justice Rehnquist joined, concurring in the judgment of Rose v.Mitchell, supra, wherein he said:
 "The respondents were found guilty beyond a reasonable doubt after a fair and wholly constitutional jury trial. Why should such persons be entitled to have their convictions set aside on the ground that the grand jury that indicted them was improperly constituted? That question was asked more than 25 years ago by Mr. Justice Jackson in Cassell v. Texas, 339 U.S. 282, 298, 70 S.Ct. 629, 94 L.Ed. 839 (dissenting opinion). It has never been answered. I think the time has come to acknowledge that Mr. Justice Jackson's question is unanswerable, and to hold that a defendant may not rely on a claim of grand jury discrimination to overturn an otherwise valid conviction." ___ U.S. at ___, 99 S.Ct. at 3009.
Mississippi Code Annotated Section 13-5-1 (1972) provides that every citizen is a competent juror who is not under the age of twenty-one (21) years, is either a qualified elector, or a resident freeholder of the county for more than one (1) year, is able to read and write, has not been convicted of an infamous crime, or the unlawful sale of intoxicating liquors within a period of five (5) years, and who is not a common gambler or habitual drunkard. A person who meets the other qualifications and can read and write only a few words is qualified as a juror. An individual, who may have been convicted of numerous lesser crimes but who has not been convicted of an infamous crime and meets the other qualifications, is a competent juror. Surely, at the point where eighteen (18) grand jurors, so selected and qualified, have been placed in the jury box, the proper administration of justice and the efficient operation of the court should permit authority, judgment and discretion on the part of the trial judge to appoint a foreman from among those grand jury members.
It is difficult to equate the argument that a trial judge (because of discrimination) should not have the authority, judgment and discretion to appoint a foreman of a grand jury, which has been empaneled under the non-discriminatory Mississippi jury selection method, with the fact that the same judge will preside over the very trial which originates from an indictment returned by that grand jury. If the trial judge cannot, with judgment, impartiality and fairness appoint a grand jury foreman, then how can he, with judgment, impartiality and fairness, preside over the trial of a person indicted by such grand jury? The question answers itself.
We are of the opinion that the trial judge correctly overruled the motion to quash. However, we suggest that trial judges acquaint themselves with the holding in Rose v. Mitchell,supra, and that they follow a procedure in selecting grand jury foremen which complies therewith. *Page 789 
 II.
The appellant next contends that the trial court erred in overruling his motion to extend the trial proceedings into the next day in order to allow appellant additional time to locate a witness.
At approximately 7:00 p.m., appellant moved the court to continue the case until the following day in order that he might attempt to find a witness whose testimony would corroborate that of a witness by the name of Lonnie D. Watson. Appellant's counsel admitted learning about the witness at noon that day. No subpoena had been requested by him, and no attempt was made to follow Mississippi Code Annotated Section 99-15-29 (1972) dealing with applications for a continuance. After the jury verdict of guilty was returned, and, during the court term, the appellant did not produce the witness, or affidavits stating what his testimony would be, and made no effort to show prejudice to the appellant on account of the absent witness. No attempt was made to followBone v. State, 207 Miss. 20, 41 So.2d 347 (1949) and Lamar v.State, 63 Miss. 265 (1885). Failure to follow the procedure outlined in those cases waives the point on appeal.
 III.
The appellant contends that the trial court erred in admitting pictures into evidence over the objection of appellant and that the verdict of the jury was contrary to the overwhelming weight of the evidence.
The evidence for the State reflects that on February 23, 1978, appellant visited Bobby Gene Braxton at her home in company with her baby girl and brother. Appellant was the boyfriend of Bobby Gene and the father of her child. He arrived there about 7:00 p.m. and, subsequently, an argument and altercation developed between appellant and Bobby Gene; she sent word for help to Mattie Harris, her mother. When Mattie Harris arrived, appellant was hitting Bobby Gene and he then struck Mattie Harris on the head, resulting in a cut to her scalp. About that time, Willie Braxton, uncle of Bobby Gene and brother of Mattie Harris, came upon the scene. He asked appellant why he was hitting Mattie Harris, and told him to quit, whereupon, appellant slapped him twice. Braxton (the deceased) tried to leave, and started toward his home next door. Appellant followed him home and stabbed him with a knife at a time when Braxton was unarmed and was doing nothing to appellant. The stab wound resulted in his demise a short time thereafter.
Appellant's version of the homicide was that Bobby Gene became angry at him, he attempted to leave and she blocked the door; that they slapped each other; that Mattie Harris arrived after Bobby Gene sent for her; that they followed him out onto the front porch and began arguing with him; that Willie Braxton came up, pushed him, and that Mattie Harris hit him with something; that he got to his car and Willie Braxton came up behind him and grabbed him by the shoulder; that Braxton was fumbling in his pocket and he then struck Braxton, got in his car and left.
It was the jury's prerogative to determine the truth of this conflict in facts and having resolved the guilt question against the appellant, that verdict is amply supported by the evidence.
The State introduced in evidence a photograph of Mattie Harris' head indicating where she had been hit by appellant, a photo of deceased's house at 1114 Dorsey Street, Jackson, which shows a dark spot on the sidewalk in front of it, and three (3) photos, showing the body of the deceased. Those photos were not objected to as being gruesome and, in our opinion, had some probative value as did the picture of the house at 1114 Dorsey Street. The picture of Mattie Harris and testimony relating thereto were a part of the res gestae and the photo corroborated and explained the testimony.
The trial judge has wide discretion in admitting photographs, and, unless he abuses that discretion, the case will not be reversed. Warren v. State, 369 So.2d 483 (Miss. 1979);Mallette v. State, 349 So.2d 546 (Miss. 1977). The Trial court did not err in admitting the photographs in evidence.
Affirmed. *Page 790 
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.