Billy GUICE and Howard Claxton, Sr., Petitioners-Appellants,

v.

Ray FORTENBERRY, Superintendent, East Carroll Parish Prison Farm, Louisiana, Respondent-Appellee.

No. 83–4022.

United States Court of Appeals, Fifth Circuit.

Jan. 9, 1984.

Rehearing and Rehearing En Banc Denied Feb. 13, 1984.

Samuel Thomas, Tallulah, La., for petitioners-appellants.

James David Caldwell, Asst. Dist. Atty., Tallulah, La., for respondent-appellee.

Before RUBIN, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Billy Guice and Howard Claxton appeal the denial of their petition for writs of habeas corpus, which is based on their claim that blacks were excluded from service as foremen on the state grand jury that indicted them. This court, sitting en banc, remanded the case for an evidentiary hearing on the issue of racial discrimination in the selection of the grand jury foreman. *Guice v. Fortenberry,* 661 F.2d 496 (5th Cir.1981). That opinion sets out, and we shall not repeat, the facts and procedural history of the case up to that point. The court found that there was insufficient evidence in the record from which to determine whether the petitioners could state a prima facie case for discrimination under *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). After the evidentiary hearing on remand, the district court found that the petitioners had made out a prima facie case, but that the State of Louisiana had successfully rebutted it. We reverse and remand with instructions that the writs of habeas corpus be issued ordering the indictments and convictions be set aside and providing the state the opportunity to seek new indictments and convictions.

## I.

The purpose of the evidentiary hearing on remand was to allow the petitioners to produce evidence relating to the degree of underrepresentation of blacks as grand jury foremen, which was not presented at the state habeas hearing. This evidence is necessary under the three-part formulation of *Castaneda* under which the petitioners must:

(1) establish that the group against whom discrimination is asserted is a recognizable, distinct class, singled out for different treatment; (2) prove the degree of underrepresentation by comparing the proportion of the group in the total population to the proportion called to serve, here as foremen, over a significant period

of time; and (3) support the presumption thus created by showing that the selection procedure is susceptible to abuse or is not racially neutral.

*Guice v. Fortenberry,* 661 F.2d at 499. The first and third of these elements had been established by the petitioners in their state court record. The degree of underrepresentation of blacks had not been established. Even though there was testimony that no black had been appointed grand jury foreman during the fifteen years prior to the time when the petitioners were indicted, there was no evidence of the total number of foremen appointed during those years. 661 F.2d at 504–06.

On remand, four witnesses testified at the evidentiary hearing. Three of them were called by the petitioners to establish their case of racial discrimination. The fourth witness was the state judge who selected the foreman of the grand jury that indicted the petitioners. The missing statistic was supplied at the hearing by the Chief Deputy Clerk of Court for Madison Parish: from the time that Judge Adams came on the bench in Madison Parish in October 1963, until the impanelling of the grand jury that indicted the petitioners, thirty-one foremen were chosen, twenty-eight of them by Judge Adams. The Chief Deputy Clerk testified that, to her personal knowledge, each of the appointed individuals was white. This comports with Judge Adams' testimony at the state habeas hearing.

It was also established at the hearing that the grand jury venire of forty individuals, from which the judge selected the foremen, was randomly selected from a larger general venire of six hundred names. The primary source of names for the general venire was the voter registration roll of the parish.[1] The jury commissions supplemented this list with the names of other qualified individuals in the community. A table showing the racial breakdowns of the voter registration rolls from 1967 through 1981 was entered into evidence. That table shows that forty-eight percent of the registered voters in Madison Parish in 1979 were black and that the percentage of black voters had been between forty-five and forty-nine since 1963.

The State of Louisiana presented Judge Cliff Adams as its sole witness. He had been a judge for the Sixth Judicial District, including Madison, East Carroll and Tensas Parishes, since October 1963. Under state law, it was his duty to select a grand jury foreman from the forty individuals who compose the grand jury venire. LA.CODE CRIM.PROC.ANN. art. 413 (West 1966). Judge Adams testified that he selected as foreman the individual whom he believed to be the best qualified for the position, regardless of race. His testimony revealed that the selection procedure was highly subjective, and that, for the most part, he relied on his personal knowledge of the qualifications of potential foremen. He admitted, "... if I don't know them, I could easily leave out a qualified person...." Toward the end of his testimony, Judge Adams stated that, in retrospect, he felt he had chosen the most qualified foremen:

> I was limited to my knowledge and I realize now that I've looked back over that list, yeah, there are Blacks in there that were qualified but I'll say this, compared to the ones that I appointed, they weren't better qualified. I will be willing to say the ones that I appointed were better qualified, White or Black.

Judge Adams testified that in the other two parishes in his jurisdiction he often made inquiries as to the qualifications of the members of the grand jury venire. Apparently he felt no need to do so in Madison Parish, where he resided and where he was often acquainted with members of the venire. No evidence was presented of any systematic attempt to obtain objective information about the qualifications of venire members in Madison Parish.

---

1. *See State v. Anderson,* 315 So.2d 266 (La. 1975) (approving use of voter registration rolls as source of general venire).

## II.

The magistrate found that the statistical evidence produced by the petitioners satisfied the second element of the *Castaneda* test, and that, coupled with evidence presented in the state habeas proceeding, it created a prima facie case of discrimination in the selection of the foreman of the grand jury that indicted the petitioners. The magistrate found, however, that the petitioners' case had been successfully rebutted by the state through the testimony of Judge Adams:

> A *prima facie* case has been submitted by petitioners. As noted, it is determined from the demeanor of all the witnesses and of Judge Adams, that there certainly was no animosity at any time in appointing other than a non-black as foreperson of the grand jury. Certainly there was discrimination. However, there was no invidious discrimination and the judge merely was following the rules laid down by the Louisiana Supreme Court and selected the best foreperson he considered available of the grand jury.

The magistrate found that Judge Adams was justified in selecting foremen known personally to him, because "[h]e felt bound under Louisiana law . . . to select the best person as grand jury foreman, who could stand up to the district attorney and if probable cause was not shown, to vote in that manner."[2] The magistrate noted Judge Adams' pride in having appointed the first black jury commissioner and the first black grand jury foreman in the parish.

Over the objection of the petitioners, the district court adopted the findings and recommendations of the magistrate and denied the petitions for habeas relief. This appeal was then taken.

## III.

The issues on appeal in this case are whether the magistrate correctly determined that the petitioners had stated a prima facie case of discrimination and, if so, whether he was correct in holding that the State of Louisiana rebutted it.

### A.

The state argues that the petitioners have failed to make out a prima facie case under *Castaneda* because underrepresentation has not been shown to have existed for a significant period of time. This, of course, is unfounded: the petitioners showed that no black had ever served as grand jury foreman in Madison Parish. There was personal testimony by a court official that each foreman from 1963 to 1979 was white. The state's argument, however, is that

> the significant period of time to fairly judge the trial court's choices of grand jury foreman as respects blacks and/or women under *Castaneda,* is no earlier than 1975 (when women were placed on the roles [sic]) and no earlier than 1977 (when a significant number of qualified blacks, i.e. teachers, ministers, officers, etc., were no longer excluded from the venires for known exemptions by law).

This argument proceeds from the premise that Judge Adams' selection of foremen may be evaluated as an independent act only as to those years in which he had a racially nonbiased venire from which to choose a foreman. The state contends that the practice of automatically eliminating from the grand jury venire any individuals who would have been entitled to a statutory excuse from service had the effect of eliminating from the venire most blacks qualified for the leadership role of foreman.[3]

---

**2.** Article 413 of the Louisiana Code of Criminal Procedure provides that "the court shall select one person from the grand jury venire to serve as foreman of the grand jury." The statute does not require or forbid any particular selection criteria.

**3.** Former LA.CODE CRIM.PROC.ANN. art. 403 (West 1967) (amended 1975) provided:

> The following persons are exempt from jury service, but the exemption is personal to them and is not a ground for challenge:
> (1) The governor, lieutenant governor, state comptroller, state treasurer, secretary of state, superintendent of public education, their clerks and employees, the members, officers, and clerks of the legislature, and the judges and active officers of the several courts of this state;

This practice, which the parish jury commissioners followed prior to 1976, was held unconstitutional in *State v. Procell,* 332 So.2d 814 (La.1976). There were only five opportunities for Judge Adams to select a foreman after the *Procell* decision, including the selection of the foreman of the grand jury that indicted the petitioners. Although no black foreman was selected on any of these five occasions, the state argues that the two-and-one-half-year period is simply an insufficient length of time to satisfy the *Castaneda* test.

■ The state urges us to hold that the petitioners have failed to state a prima facie case simply because Louisiana has eliminated one admittedly discriminatory step in its foreman-selection process. We are not convinced that the distinction between the two periods (1963 to 1976 and 1976 to 1979) is so great that we are required to view them separately for the purpose of determining whether the petitioners have established a prima facie case. For one thing, the only evidence in the record tending to prove that the jury commission's practice eliminated qualified blacks from the venire is the testimony of Judge Adams. He did not, however, say that the practice left the venires with no qualified blacks, nor did he actually testify that the percentage of qualified blacks in the venires had increased since 1976. Absent stronger evidence that the selection process has been materially changed, we have no trouble holding that the two periods of time should not be treated separately for the purpose of determining a prima facie case.

■ The petitioners have succeeded in proving a pattern of underrepresentation of

blacks stretching back as far in time as any of the witnesses can remember. The record shows that over a period of fifteen years, during which the pool from which venire members were randomly selected was approximately forty-five percent black, no black grand jury foreman was appointed, even though there were thirty-one opportunities to do so. The fact of underrepresentation has clearly been established under *Castaneda.*

### B.

■ The state is, most certainly, entitled to rebut the presumption of discrimination established by the petitioners. To do so, it must show that the pattern of underrepresentation proved (no blacks appointed in fifteen years) was the result of a "racially neutral selection procedure." *Alexander v. Louisiana,* 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536, 542 (1972).

The Supreme Court has held, on more than one occasion, that "affirmations of good faith in making individual selections are insufficient to dispel a prima facie case of systematic exclusion." *Id. See also Turner v. Fouche,* 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). In *Hernandez v. State of Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954), the Supreme Court held that the testimony of five jury commissioners that they had tried to select the best qualified jurors was insufficient to overcome a prima facie case of denial of equal protection. The *Hernandez* court quoted with approval the following passage from an early equal protection case:

If, in the presence of such testimony as defendant adduced, the mere general as-

(2) Any other public official, if jury service would seriously interfere with the performance of his official duties;

(3) Attorneys-at-law, peace officers, ministers of the gospel, physicians and dentists actively engaged in the practice of their professions, school teachers, school bus drivers, pharmacists, members of paid fire departments, chiefs and their first assistants of bona fide volunteer fire departments, and persons who are required to travel regularly and routinely in the course and scope of their employment;

(4) Persons who because of age, sickness, or other physical infirmity would suffer serious detriment if required to serve as a juror; and

(5) Persons who have served as grand or petit jurors in criminal cases or as trial jurors in civil cases during a period of twelve months immediately preceding their selection for jury service.

Exemptions for prospective jurors are now governed by Louisiana Supreme Court rule.

sertions by officials of their performance of duty were to be accepted as an adequate justification for the complete exclusion of negroes from jury service, the constitutional provision ... would be but a vain and illusory requirement.

*Norris v. Alabama,* 294 U.S. 587, 598, 55 S.Ct. 579, 584, 79 L.Ed. 1074, 1081 (1935).

■ The sweeping language of the relevant Supreme Court opinions does not foreclose the issue. A presumption of discriminatory conduct may be successfully rebutted by testimony of responsible public officials if that testimony establishes the use of racially neutral selection procedures. The Supreme Court said as much in *Castaneda,* where it noted the absence of testimony from grand jury commissioners as to the method by which they determined the qualifications for grand jurors. 430 U.S. at 499, 97 S.Ct. at 1282, 51 L.Ed.2d at 513. The question before us is whether the testimony of Judge Adams rises to the level required to rebut the petitioners' case. We hold that it does not. Judge Adams' testimony revealed that no objective criteria were used in his selection of grand jury foremen; rather, he selected individuals, always white, who were known to him. The dissent notwithstanding, Judge Adams' testimony regarding the qualifications of the particular individual he chose as foreman of the grand jury does not undermine our reasoning when considered in the light of the fact that he testified that he made no inquiries regarding the qualifications of any of the other venire members. Judge Adams' own evaluation of the nature of the selection process is revealed by his observation that "when we have a Black Judge, they're gonna know who's the most qualified amongst the Blacks to be a foreman."

This case is distinguishable from *United States v. Perez-Hernandez,* 672 F.2d 1380 (11th Cir.1982), in which the selection of grand jury foremen in a Florida federal district court was upheld against an equal protection challenge.[4] In *Perez,* a prima facie case of discrimination was established

by the defendants, but was rebutted by the testimony of eight district judges involved in the foreman selection process.

Each judge testified that he acted independently of the other judges in choosing a grand jury foreman, although each employed similar guidelines in making a selection. These guidelines generally consisted of four separate factors: (1) occupation and work history; (2) leadership and management experiences; (3) length of time in the community; and (4) attentiveness during the jury empanelment. These factors directly relate to the ability to perform the administrative functions and duties of a grand jury foreman.

672 F.2d at 1387 (footnotes omitted).

■ The record in this case, unlike *Perez,* shows that there were no objective criteria or guidelines under which Judge Adams operated in his selection of grand jury foremen. Although his testimony was replete with "affirmations of good faith" in the performance of his duties, it also revealed that his approach to the selection process was necessarily subjective and biased. We believe, as do our colleagues on the Eleventh Circuit, that "testimony from ... alleged discriminators should be viewed with a great deal of judicial scrutiny." *United States v. Perez-Hernandez,* 672 F.2d at 1387. Viewing the rebuttal evidence in this case, we hold it inadequate to overcome the presumption of discrimination established by the petitioners.

## IV.

This decision should be the last from this circuit regarding the petition of Guice and Claxton, who have argued long and hard for the relief to which we today hold they are entitled. It has not been our task in this appeal and decision today to determine whether racial discrimination in the selection of a grand jury foreman requires that indictments be quashed and convictions be reversed. This result was the assumption

---

**4.** A part of the holding of *Perez* not relevant to this issue has been rejected by this circuit.

*United States v. Cronn,* 717 F.2d 164, 167 (5th Cir.1983).

of the Supreme Court in *Rose v. Mitchell,*[5] and this court has since adopted the position that such discrimination compels voiding the indictments and convictions. "If convictions must be set aside because of taint of the grand jury, we see no reason to differentiate the result because discrimination affected the foreman." *Guice v. Fortenberry,* 661 F.2d at 499. *See Williams v. Mississippi,* 608 F.2d 1021, 1022 (5th Cir. 1979).[6]

Rather, it has been our task to determine whether in fact the petitioners were indicted by a grand jury whose foreman was chosen in a discriminatory manner. We hold simply that the petitioners, by showing a long history of the complete and absolute exclusion of blacks from a position for which approximately forty-five percent of the available candidates were black, have established a presumption of discrimination which has not been rebutted by the evidence adduced by the State of Louisiana.

We are advised by counsel that neither Guice nor Claxton is now in custody as a result of the constitutionally defective indictments. Nevertheless, the district court is instructed to issue writs of habeas corpus setting aside the indictments and the convictions of the petitioners, but providing, of course, that, the state may, within a reasonable period of time, seek to reindict the petitioners, and, if they are reindicted, seek to convict them.

REVERSED and REMANDED.

GARWOOD, Circuit Judge, dissenting:

I respectfully dissent.

5. 443 U.S. 545, 553 n. 4, 99 S.Ct. 2993, 2998 n. 4, 61 L.Ed.2d 739, 747 n. 4 (1979).

6. In this case, because the foreman was selected from the venire rather than from the grand jury itself, any discrimination in the selection of a foreman necessarily tainted the composition of the grand jury as well: only eleven of its twelve members were picked at random.

1. While the state's arguments do not destroy the *prima facie* case, they nevertheless in my opinion do weaken it somewhat. Over the years there obviously has been significant relevant change in the jury selection system, and otherwise, in Madison Parish.

I agree with the majority and the trial court that petitioners established a *prima facie* case, and indeed that conclusion is virtually compelled by our holding on the prior appeal. *Guice v. Fortenberry,* 661 F.2d 496 (5th Cir.1981).[1] However, that holding does not speak to the issue presently before us: Whether the state's rebuttal evidence was sufficient so that the trial court was not *required* to find that, absent racial considerations, the grand jury which indicted petitioners would have had a different foreman. In my view, the state's evidence was sufficient for this purpose, and the findings of the trial court based thereon are not clearly erroneous. *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).[2]

In assessing the contours and weight of the burden placed on the state by petitioners' *prima facie* case, and hence the scale against which the sufficiency of the state's rebuttal evidence is to be measured, I believe it appropriate to consider the character of the proceeding before us, and the nature of the interest here at stake. *See Sumner v. Mata,* 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1979) (quoting with approval from *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1807, 60 L.Ed.2d 323 (1979)). Particularly significant in this connection is the fact that we are reviewing the trial court's denial, following an evidentiary hearing, of a federal habeas corpus claim of racial discrimination in the selection of a state grand jury foreman, which has no relevance to the fairness or reliability of the proceedings by which petitioners' guilt was ascertained. Whether the habeas .

2. *Pullman-Standard* clearly holds that the issue of intent to racially discriminate is one of fact within the meaning of the "clearly erroneous" rule, and recognizes that this remains true even where determination of a constitutional issue depends on such a fact-finding. *Id.* at 287–88, 102 S.Ct. at 1789–90. If the trial court's factual finding is influenced by an erroneous view of the law, this will normally require a remand but does not authorize the appellate court to itself resolve the disputed fact issue. *Id.* at 291–92, 102 S.Ct. at 1791–92.

setting justifies the imposition of a somewhat less extensive and heavy burden in respect to the state's rebuttal evidence to a *prima facie* case of grand jury discrimination has not been expressly addressed by the Supreme Court. In *Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), no *prima facie* case was made and, as Justice Powell pointed out in his concurring opinion there, until *Rose* it had "been an open question whether federal habeas corpus could be granted a state prisoner solely because the prisoner's grand jury was discriminatorily chosen." *Id.* at 582, 99 S.Ct. at 3013 (footnote omitted).[3] As to discrimination in grand jury *foreman* selection, *Rose* merely assumed "without deciding" that it could be reached on habeas corpus, *id.* at 551 n. 4, 99 S.Ct. at 2998 n. 4, and though on the prior appeal herein this Court held that it could be so reached, we had no occasion to consider what character of evidence might suffice in rebuttal of a *prima facie* case. *Guice* at 499. While it has been determined that the interests involved are sufficiently important to warrant federal habeas review, that does not necessarily mean that such review should be as extensive either as on direct appeal or as it would be if the accuracy or fairness of the determination of guilt or innocence were at issue.[4] Moreover, in Justice Black-

---

**3.** Indeed, Justice Powell's opinion in *Rose* suggests that the question still remains open, *id.* at 582 n. 3, 99 S.Ct. at 3013 n. 3, and that was apparently the view of the majority of this Court in *Barksdale v. Blackburn,* 639 F.2d 1115, 1120 (5th Cir.), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 603, 70 L.Ed.2d 593 (1981). However, our prior opinion in this case holds to the contrary and is clearly binding on this panel. *Guice,* at 498 n. 2.

**4.** The nature of the nexus between the petitioners' substantial rights and the claimed constitutional wrong is even more attenuated here than in other grand jury or grand jury foremen cases, because under *Louisiana* law these petitioners had no right to be free of prosecution for the offenses charged except on indictment by a grand jury. They could have been prosecuted on information filed by the district attorney (and it is evident that the grand jury here in no sense thrust this indictment upon the district attorney, who apparently was eager to prosecute before the grand jury considered the case). *See* L.S.A.–Const. art. 1, § 15; L.S.A.–C.Cr.P. art. 382; *State v. Qualls,* 353 So.2d 978 (La.1977); *Henderson v. Cronvich,* 402 F.2d 763 (5th Cir.1968). And, of course, the United States Constitution not only does not require that state prosecutions be on grand jury indictment, but also does not require that such prosecutions be on the basis of any neutral, third-party probable cause determination. *Gerstein v. Pugh,* 420 U.S. 103, 119, 125 n. 26, 95 S.Ct. 854, 869 n. 26, 43 L.Ed.2d 54 (1975). In *Rose* Justice Blackmun specifically noted that Tennessee required the offenses in question to be prosecuted only on grand jury indictment. *Id.* 443 U.S. at 547 n. 1, 99 S.Ct. at 2996 n. 1. Similarly, in *Pierre v. Louisiana,* 306 U.S. 354, 357, 59 S.Ct. 536, 538, 83 L.Ed. 757 (1939), a direct review case, Justice Black's opinion expressly mentions that under Louisiana law prosecution of the offense in question, being capital, required a grand jury indictment. The

opinions in other Supreme Court cases dealing with claims of discriminatory grand jury selection in Louisiana likewise disclose that the offenses involved were capital. *See Eubanks v. Louisiana,* 356 U.S. 584, 585, 78 S.Ct. 970, 972, 2 L.Ed.2d 991 (1958); *Alexander v. Louisiana,* 405 U.S. 625, 626 n. 1, 92 S.Ct. 1221, 1223 n. 1, 31 L.Ed.2d 536 (1972). *See also Michael v. Louisiana,* 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1956); *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). In *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), discriminatory grand jury selection in a Texas felony prosecution was raised on habeas corpus but, as Justice Powell notes in his dissent, the availability of habeas corpus "was not addressed below and was not briefed or argued in" the Supreme Court. *Id.* at 508 n. 1, 97 S.Ct. at 1287 n. 1. *See also Rose,* 443 U.S. at 582, 99 S.Ct. at 3013. Texas law requires all felony prosecutions to be by grand jury indictment. Tex. Const. art. I, § 10.

It is, of course, absolutely vital that there be complete racial neutrality in the administration of justice (as well as in other areas of governmental action). But it in no way denigrates the importance of that most fundamental principle to attach significance to the presence and nature of any nexus between its claimed violation and the substantial rights of the party asserting such claim in a proceeding to set aside a criminal conviction. We would not, I assume, set aside a conviction where the jury in question was not selected on a racial basis merely because there were other juries impaneled in the same county at that time whose selection was racially motivated. *Cf. Cassell v. Texas,* 339 U.S. 282, 290, 70 S.Ct. 629, 633, 94 L.Ed. 839 (1950) (direct appeal of Texas murder conviction "... the issue must be whether there has been discrimination in the selection of the jury that has indicted petitioner ..."). Even when the particular grand jury involved *is* racially selected, actual prejudice is relevant on habeas

mun's opinion in *Rose* one of the major reasons given for holding that such claims could be considered on federal habeas was the belief that "in general" such claims would not be likely to receive the necessary "full and fair hearing" in the state courts, whose own procedures and actions were being challenged, and that hence "[a] federal forum must be available if a full and fair hearing of such claims is to be had." *Id.* 443 U.S. at 561, 99 S.Ct. at 3003.

Accordingly, as this is a federal habeas proceeding and the nexus between petitioners' substantial rights and the claimed constitutional violation is most attenuated, I would hold that the burden on the state, respecting the scope and character of rebuttal evidence necessary to meet a *prima facie* case to the extent of raising a fact issue for resolution by the trial court, is somewhat less broad and heavy than such burden would be in other jury discrimination claim contexts.

Against this background, I turn to consideration of whether the state's rebuttal evidence here was such that it could legitimately be credited by the federal trial court. The Louisiana trial judge, in his testimony at the hearing following our prior remand, not only stated that his appointment of the foreman of the grand jury which indicted petitioners was not based on racial considerations and was made on a "best qualified" basis, but also concretely described his specific reasons for appointing this particular individual as foreman of this particular grand jury:

"Q. . . . why, Judge Adams, from that particular list of people [the forty-person grand jury venire] did you pick Mr. Harvey Mounger [as foreman]? What factors went into your consideration in that choice?

"A. I have to admit that I had appointed Mr. Mounger back in 1965. Mr. Mounger is the president of the bank; he's a graduate in Business Administration; he's a graduate in Law from Tulane; he served in the Army as an enlisted man; he went through Officers Candidate School and became an officer; he's —my wife is of the same church that he is and they keep him on the Vestry all the time; he's just a sound, good, reliable, dependable person and—you brough [*sic*] it up—we had had district attorneys in there fighting and all and I just thought that would be a good man to watch you and everybody else, so I put him on there and I believe I'd put him on there again."

While the lack of any prior appointment of a black as grand jury foreman properly weighs heavily against Judge Adams,[5] it nevertheless seems highly unlikely that in a parish such as this, with a population less than 15,000, there would be any significant number of individuals with qualifications equal or superior to those of Mr. Mounger,[6] and vastly more unlikely that any of such individuals would be on this particular forty-person grand jury venire.[7] It according-

corpus if there has been a failure to comply with state rules concerning grand jury challenges, notwithstanding that there is cause for such failure. *Francis v. Henderson,* 425 U.S. at 542, 96 S.Ct. at 1711 (". . . not only a showing of 'cause' for the defendant's failure to challenge the composition of the grand jury before trial, but also a showing of actual prejudice . . ."). *See also Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (guilty plea made on advice of competent counsel bars habeas attack on indicting grand jury as having been racially selected).

5. However, it is to be noted that Judge Adams had thrice previously appointed black jury commissioners and likewise appointed the first black grand jury foreman in the parish. While the significance of the latter appointment is

diminished since it occurred after petitioners' state trial, at which they raised the issue of discrimination in appointment of the foreman, it nevertheless occurred prior to any of our rulings on the prior appeal.

6. It may also be noted of those serving as grand jury foremen in this parish from 1956 through the hearing below, Mounger was the only person to so serve as many as three times (he also served in 1962), and, with a single possible exception, the only person to so serve more than once. There was no impeachment of Mounger's qualifications, nor any suggestion that they were not unusually outstanding in this community.

7. Such a remote probability is even further decreased by reason of the fact that persons

ly appears to me that, there being no indication that this venire included anyone even arguably as well qualified as Mr. Mounger, the trial court—who observed Judge Adams' demeanor on the stand—could legitimately conclude that Judge Adams appointed Mounger foreman for the reasons Adams stated under oath—Mounger's specifically described qualifications—and no other.

Judge Adams' testimony goes beyond the "mere generalities" and "mere general assertions by officials of their performance of duty" condemned in *Norris v. Alabama,* 294 U.S. 587, 598, 55 S.Ct. 579, 583, 79 L.Ed. 1074 (1935), and subsequent cases.[8] Here the testimony states concrete, specific, and *prima facie* reasonable and valid, grounds for having made the single choice at issue. While the trial court could legitimately

have determined not to credit this evidence, it was not required to reject it. Certainly testimony of this kind is neither incompetent nor unworthy of belief as a matter of law. *See Castaneda,* 430 U.S. at 498–99, 97 S.Ct. at 1282; *Akins v. Texas,* 325 U.S. 398, 401–02, 65 S.Ct. 1276, 1278–79, 89 L.Ed. 1692 (1945). In my opinion it was within the province of the federal trial court, as fact finder, to credit this testimony and determine that the foreman of *this* grand jury was not selected on racial grounds. Therefore, I must dissent from our reversal of the court below and rendition of judgment for the petitioners.

such as teachers, lawyers, doctors and ministers, actively engaged in the practice of these professions, were entitled to, and usually did, claim exemption from grand jury service. There is no evidence of the number of blacks in this grand jury venire (though two served on the grand jury which indicted petitioners); nor is there any evidence as to the qualifications of any individual on it other than Mounger. Such evidence was obviously easily accessible to the petitioners. Judge Adams' testimony indicates he was generally knowledgeable about those serving on the Madison Parish grand jury venires, and there was no evidence he was not aware of the qualifications of any member of this particular venire.

Although the offense for which petitioners were indicted was apparently something of a local *cause célèbre,* as they were the chief and assistant chief of police of the largest city in the parish, it occurred after the grand jury foreman had been selected, and hence could not have influenced the selection.

**8.** In *Norris* the testimony was "that black residents were not excluded from this general list; that in compiling the jury roll he did not consider race or color; that no one was excluded for that reason"; other evidence, however, indisputably showed many qualified blacks who were not listed. *Id.* at 597–98, 55 S.Ct. at 583. In *Alexander v. Louisiana,* 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972), "a member of the jury commission, testified that no consideration was given to race during the selection process." *Turner v. Fouche,* 396 U.S. 346, 361, 90 S.Ct. 532, 540, 24 L.Ed.2d 532 (1970), an injunction proceeding, refused to give decisive weight to "testimony of the jury commissioners and the superior court judge that they included or excluded no one because

of race." Similarly, in *Hernandez v. Texas,* 347 U.S. 475, 481, 74 S.Ct. 667, 672, 98 L.Ed. 866 (1954), the testimony held to be insufficient rebuttal was that by "five jury commissioners that they had not discriminated against persons of Mexican or Latin American descent in selecting jurors. They stated that their only objective had been to select those whom they thought were best qualified." *Eubanks v. Louisiana,* 356 U.S. 584, 587, 78 S.Ct. 970, 973, 2 L.Ed.2d 991 (1958), applied the same approach in respect to rebuttal evidence of "... judges now serving on the local court [who] testified generally that they had not discriminated against Negroes in choosing grand juries, and had only tried to pick the best available jurors."

It is also to be noted the choice of a foreman—of whom there can only be one for each grand jury and who is to be selected by the judge from the grand jury venire, while the remaining grand jurors are selected therefrom by lot—obviously contemplates and requires a different sort of selection than that for the usual grand or petit jury venire. Plainly, the choice must be made on the basis of something beyond the presence of qualifications normally common to large groups of people, such as broad age ranges, minimal educational attainment, voter qualification, lack of a criminal record and the like. Moreover, as but a single individual is selected, in any given instance this is necessarily exclusive of all but one race, while in a group selection it is to be expected that in most instances members of both races in a community such as this would be included. Finally, the selection is made from a limited group, so that the selection of a person with unusually high qualifications is a particularly strong indication that such qualifications were the basis of the choice.