404 So.2d 553 (1981)
Walter Lee JOHNSON
v.
STATE of Mississippi.
No. 52900.
Supreme Court of Mississippi.
October 14, 1981.
Bridgforth, Woods & Buntin, Taylor Buntin, John G. Zizmann, Southaven, for appellant.
Bill Allain, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, P.J., and WALKER and BOWLING, JJ.
*554 WALKER, Justice, for the Court:
This is an appeal from the Circuit Court of Lafayette County wherein the appellant, Walter Lee Johnson, was convicted of capital murder and sentenced to life in the custody of the State Department of Corrections.
Appellant and a co-defendant were indicted by the Panola County grand jury in September, 1979, for the robbery and murder of Birnie Keating, the proprietor of a small service station in Sardis, Mississippi. The court granted a motion for severance and upon appellant's motion granted a change of venue from Panola County to Lafayette County.
The evidence showed that on Friday, August 3, 1979, appellant Walter Lee Johnson, borrowed George Thompson's white Ford automobile in Memphis, Tennessee. Saturday morning appellant visited Larry Henderson in Sardis and talked of "getting some quick money." The Keating Service Station was mentioned. About 10:00 a.m. that day, Birnie Keating was found standing in the doorway of the store with blood all over him. He died two days later.
Willie Earl Patton, appellant's co-defendant, testified that he and appellant went to Mr. Keating's store that morning. While Keating was in the back getting antifreeze, appellant hit Keating with his fist, they began to struggle and Keating fell to the floor. Patton further testified that while he was trying to open the safe, appellant Johnson kicked Keating in the head repeatedly. The Shelby County medical examiner testified Keating's death was due to multiple blunt trauma to the head.
After the robbery, appellant admitted to several friends that he had robbed a store in Sardis and beaten a man during this robbery. On October 30, 1979, appellant was arrested in Indianapolis, Indiana, by the F.B.I.
This record reveals a needless, inexcusable killing, brutally accomplished in the course of an armed robbery. We find the verdict of the jury was more than justified by the evidence, and, under the circumstances, *555 appellant was fortunate not to have been sentenced to suffer the death penalty.
On appeal appellant asserts only one assignment of error, that discrimination in selection of the foreman of the grand jury existed at the time of appellant's indictment.
The record showed that according to the 1970 census, the percentage of black persons over 21 years of age in Panola County was 43 percent, while white persons comprised 57 percent of the population. The 1980 census figures from Panola County reveal that white persons comprise approximately 50.8 percent of the total population, while blacks comprise approximately 49 percent (the remaining .2 percent of the population consists of other minorities).[1] It was undisputed that since the implementation of the Jury Selection Act in 1975 there has been adequate minority representation on grand and petit juries in Panola County. However, in the ten terms of court since 1975 no black person has ever been appointed grand jury foreman. It was also proved that since 1959, 42 grand jury foremen had been appointed and that none were black. Appellant does not attack the makeup of or the manner of selecting the grand jury, nor does he contend the grand jury was selected in an unconstitutional or discriminatory manner. He does contend, however, that the indictment is void because black foremen were systematically not appointed, in a discriminatory manner.
There is no testimony in the record to the effect that failure to select a black grand jury foreman was intentionally or purposely done. However, the appellant strongly contends that the failure to appoint a black foreman under the facts above enumerated makes out a prima facie case of discrimination in an unconstitutional manner which was not rebutted by the State.
The State contends that the crucial period for determining discrimination should not begin until 1975 when the new Jury Selection Act went into effect and that this does not constitute such a significant period of time as to enable the Court to determine whether there has been constitutionally prohibited discrimination. With this we agree.
In Rose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), the United States Supreme Court held that while the Tennessee method of selecting the grand jury foreman (according to Tennessee procedure, the position is filled by the trial judge from the general population, and he has broad authority in grand jury matters and serves sometimes for several years) was discriminatory and susceptible to abuse, respondent Mitchell had not established a prima facie case of racial discrimination because the evidence did not show underrepresentation of Negroes for a significant period of time. The Court observed, however, that "A criminal defendant `is entitled to require that the state not deliberately and systematically deny to members of his race the right to participate as jurors in the administration of justice.' Alexander v. Louisiana, 405 U.S. [625] 628, 629, 92 S.Ct. 1221 [1224], 31 L.Ed.2d 536 (1972). Accordingly, where sufficient proof of discrimination in violation of the Fourteenth Amendment has been made out and not rebutted, this Court uniformly has required that the conviction be set aside and the indictment returned by the unconstitutionally constituted grand jury be quashed. E.g., Hill v. Texas, 316 U.S. 400, 406, 62 S.Ct. 1159 [1162], 86 L.Ed.2d 1559 (1942)." (443 U.S. at 551, 99 S.Ct. at 2998).
In a footnote to the above quoted language, the Court said: "[W]e may assume without deciding that discrimination with regard to the selection of only the foreman requires that a subsequent conviction be set aside, just as if the discrimination proved had tainted the selection of the entire grand jury venire. See Carter v. Jury Commission, 396 U.S. 320, 338, 90 S.Ct. 518 [528], 24 *556 L.Ed.2d 549 (1970)." (443 U.S. at 551-552, 99 S.Ct. at 2998).
A similar case in Mississippi is that of Herring v. State, 374 So.2d 784 (Miss. 1979), where appellant contended his indictment was void because black foremen were systematically excluded. In Herring, this Court held that the appellant had failed to make out a prima facie case of discrimination in the selection of the grand jury foreman, but brought to the attention of the bench and bar the holding in Rose v. Mitchell, supra.
Under Mississippi procedure, the grand jury foreman is appointed by the trial judge after the grand jurors are selected in a random procedure as required in Mississippi Code Annotated section 13-5-26 (Supp. 1981). The foreman is administered a statutory oath, and the other grand jurors are administered an oath that they will be bound by the same oath taken by the foreman. Miss. Code Ann. § 13-5-45 (1972). The foreman has the authority to order subpoenas for all witnesses, swear the witnesses, and he keeps a record of the witnesses sworn for the court. Miss. Code Ann. § 13-5-63 (1972). Except for this authority, the foreman has no greater responsibility in the returning of indictments than any other grand juror; and, the grand jury serves for a very limited period of time. As a matter of common practice, any member of the grand jury may request the issuance of subpoenas and may call for any information or investigation authorized by law. Unlike the Tennessee statute, a grand jury foreman in Mississippi has no more discretionary responsibilities or duties than any other member of the grand jury.
In this case a grand jury adequately representing the population of Panola County, which is 49 percent black and 50.8 percent white with .2 percent representing other minorities, indicted the appellant, and a petit jury, also adequately comprised with respect to the races of Lafayette County, convicted appellant of capital murder. Consequently, under these undisputed facts, no theory could be reasonably justified upon which to predicate a holding that this individual defendant has suffered any prejudice.
However, we recognize that the assertion of this proposition by the defendant has a far broader purpose than just protecting the defendant from bias or prejudice because of the makeup of a grand jury. That purpose is to assure all segments of the population the opportunity to participate, without discrimination, in the entire jury selection and decisional process. In this regard, Mississippi has made great strides since the implementation of the Jury Selection Act in 1975 and has reached a point where there are virtually no claims of discrimination with respect to the makeup of juries in this State. We also recognize that qualified persons of the minority races should be appointed grand jury foremen and take judicial notice that they have been appointed as such throughout the State. If there be any counties in which they have not been so appointed, then we urge the circuit judge to give serious consideration to the appointment of qualified members of a minority at the convening of the next grand jury in that county. Failure to do so, in a discriminatory manner, could be adequate cause to quash indictments in the future. We urge the courts to take notice of Rose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979); Herring v. State, 374 So.2d 784 (Miss. 1979) and this opinion and act accordingly.
The record in this case does not show that the attorneys for the appellant were representing him when the grand jury was drawn and the foreman appointed; but, hereafter, when an attorney represents members of a minority race prior to the convening of a grand jury, the attorney has a duty to call to the attention of the trial judge any developing pattern that could possibly be interpreted as discriminatory so that the court will have an opportunity to correct any possible error or oversight. Attorneys may not consciously allow a situation to develop, without objection, sandbagging the court and later claim error on behalf of their client.
*557 This record reveals that the broad purpose of the rule requiring appointment of minorities as grand jury foremen has been served now in Panola County. A black was appointed foreman of the grand jury at the next succeeding term after the appellant was tried and convicted; and, we feel reasonably sure that this will not be a problem in that county in the future.
Therefore, since the appellant was not personally prejudiced in any way by failure to have a black foreman of the grand jury by which he was indicted and since the broader purpose of assuring that blacks be appointed has been accomplished, we are of the opinion that no reversible error has been demonstrated.
The appellant's conviction and sentence are affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and BROOM, LEE, BOWLING and HAWKINS, JJ., concur.
SUGG, J., took no part.
NOTES
[1] We take judicial notice of these census statistics from the 1980 Census of Population and Housing advance reports for Mississippi.