**Walter Lee JOHNSON, Petitioner–Appellant,**

v.

**Steve W. PUCKETT, et al., Respondents–Appellees.**

**No. 90–1081.**

United States Court of Appeals, Fifth Circuit.

April 29, 1991.

Julie Ann Epps, Rienzi, Miss. (Court-appointed), for petitioner-appellant.

Walter Lee Johnson, Parchman, Miss., pro se.

Charlene R. Pierce, Sp. Asst. Atty. Gen., Marvin L. White, Asst. Atty. Gen., Jackson, Miss., for respondent-appellee.

Before RUBIN, POLITZ, and DUHÉ, Circuit Judges:

ALVIN B. RUBIN, Circuit Judge:

A black state prisoner, indicted for murder in 1979 and thereafter convicted, contends that he was denied equal protection of the law because for a twenty year period up to and including his indictment, 42 grand jury foremen, all of them white, had been appointed by the circuit judges of the county in which he was indicted, although the population of the county was 43% black. He alleges that the white foreman of the grand jury that indicted him was therefore selected in a racially discriminatory manner. The district court nonetheless denied his petition for a writ of

habeas corpus. Because the district court applied an inappropriate standard to evaluate his equal protection claim, and because under the correct standard the petitioner has proved discrimination in the grand-jury-foreman-selection process, we reverse and remand to the district court to grant the relief requested.

## I.

On September 24, 1979, Walter Lee Johnson was indicted in Panola County, Mississippi for murder in the commission of a robbery. At his trial, Johnson, a black male, moved to quash the indictment because of racial discrimination in the selection of the grand jury foreman, but the motion was denied. The jury found Johnson guilty of capital murder and the court sentenced him to life imprisonment. He then appealed his conviction to the Mississippi Supreme Court, alleging denial of his right to equal protection because of racial discrimination in the selection of the grand jury foreman.

The historic facts contained in the state trial court evidentiary hearing record and affirmed by the Mississippi Supreme Court are not in dispute. The population of Panola County was 43% black and 57% white in 1970; by 1980, the black population had increased to 49%. Since the passage of the Mississippi Jury Selection Act,[1] effective in 1975, minorities have been adequately represented on both grand and petit juries. The circuit judge appoints one of the grand jurors to serve as foreman after the panel has been selected. From March 1959 through Johnson's indictment in September 1979, 42 foremen had been appointed in the First Judicial District of Panola County; none of them was black.

Nevertheless, the Mississippi Supreme Court affirmed Johnson's conviction, holding that he had failed to establish that racial discrimination in the foreman selec-

tion process in Panola County had existed for the requisite "significant period of time."[2]

Johnson then filed a Petition for Writ of Habeas Corpus in the Northern District of Mississippi *pro se*, naming the Warden of the State Penitentiary as defendant and alleging several grounds for relief. Although the United States Magistrate found Johnson's other grounds for relief without merit, he recommended that the petition be granted on the ground that the process for selecting grand jury foremen in Panola County violated the equal protection clause of the Fourteenth Amendment. The district court, however, overruled the Magistrate's recommendation and denied the writ.

## II.

The central issue is which of two Supreme Court cases governs Johnson's claim. In 1979, in *Rose v. Mitchell*,[3] the Supreme Court considered a claim brought by two black petitioners that discrimination in the grand-jury-foreman-selection process in Tennessee constituted a violation of equal protection. The Court held that racial discrimination in the selection of the grand jury violates the equal protection clause, and that in such cases, "this Court uniformly has required that the conviction be set aside and the indictment returned by the unconstitutionally constituted grand jury be quashed."[4] The Court assumed, without deciding, that "discrimination with regard to the selection of only the foreman requires that a subsequent conviction be set aside, just as if the discrimination proved had tainted the selection of the entire grand jury venire."[5] Accepting the Supreme Court's assumption, this court en banc has since held that discrimination in the selection of a grand jury foreman in

1. Miss.Code Ann. §§ 13-5-2 *et seq.* (Supp.1990).

2. *Johnson v. State,* 404 So.2d 553, 556 (Miss. 1981).

3. 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979).

4. *Id.* at 551, 99 S.Ct. at 2998; *see also Hill v. Texas,* 316 U.S. 400, 406, 62 S.Ct. 1159, 1162, 86 L.Ed. 1559 (1942).

5. *Rose,* 443 U.S. at 551 n. 4, 99 S.Ct. at 2998 n. 4.

violation of the equal protection clause mandates that the conviction be vacated.[6]

The Supreme Court subsequently revisited this issue in *Hobby v. United States*,[7] holding that discrimination in the selection of a *federal* grand jury foreman did not constitute a violation of *due process* and therefore did not warrant that the conviction be set aside. In the present case, the district court found that the selection process and authority of grand jury foremen in Panola County were more closely akin to the procedure in the federal system than the procedure in Tennessee, concluded that *Hobby* constituted controlling precedent, and therefore denied Johnson's petition.

### III.

 In a federal habeas corpus proceeding, we review the district court's legal determinations *de novo*.[8] The State contends that Johnson's petition asserted only a claim for violation of his right to due process, rather than to equal protection, and that his claim is therefore foreclosed by *Hobby*.

Johnson filed his *pro se* petition by filling out a form required by the district court. He did not propose any specific constitutional provision as the basis for relief requested in his petition; he merely alleged as his first ground for relief: "[d]iscrimination in selection of the Grand Jury Foreman existed at the time of Petitioner's Indictment." Under a section of the form entitled "Supporting Facts," Johnson described the historical absence of black grand jury foremen in Panola County and stated that "petitioner was denied of [sic] due process." Since Johnson filed his petition *pro se*, we must accord it a liberal construction.[9] Even were this not a *pro se* petition, however, it would be sufficient to assert a claim of violation of Johnson's right to equal protection under the Fourteenth Amendment. Traditionally, a petition need only "allege the facts concerning the applicant's commitment or detention;"[10] it need not plead the law.[11] The Supreme Court has recently construed a pretrial motion alleging only "that the prosecution had engaged in a pattern of excluding black persons from juries 'over a long period of time,'" combined with a later motion for a new trial citing only the Sixth Amendment, sufficient to raise an equal protection claim under the Fourteenth Amendment.[12] Similarly, we find Johnson's allegation of discrimination in the grand-jury-foreman-selection process sufficient to allege a claim for relief under the equal protection clause.

Moreover, Johnson's petition states that "[t]his ground was raised during the trial and assigned as an error on Direct Appeal to the Mississippi Supreme Court." Johnson had appealed to the Mississippi Supreme Court on the sole ground that his right to equal protection was violated by the grand-jury-foreman-selection process in Panola County. Since the petition refers to his direct appeal, the State was effectively given notice of Johnson's equal protection claim. We therefore find that Johnson's habeas petition raises a claim of denial of his right to equal protection under the Fourteenth Amendment.

### IV.

The State contends, however, that even if Johnson has asserted deprivation of his right to equal protection, *Hobby* forecloses his claim for habeas relief. It maintains that, according to *Hobby*, the right to habeas corpus relief articulated in *Rose* depended on three considerations: 1) the nature of

---

**6.** *Guice v. Fortenberry*, 661 F.2d 496, 499 (5th Cir.1981) (en banc).

**7.** 468 U.S. 339, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984).

**8.** *Humphrey v. Lynaugh*, 861 F.2d 875, 876 (5th Cir.1988), *cert. denied* 490 U.S. 1024, 109 S.Ct. 1755, 104 L.Ed.2d 191 (1989).

**9.** *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Brown v. Estelle*, 530 F.2d 1280, 1283 (5th Cir.1976).

**10.** 28 U.S.C. § 2242 (1988).

**11.** *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 1496–97, 52 L.Ed.2d 72 (1977).

**12.** *Ford v. Georgia*, — U.S. ——, 111 S.Ct. 850, 855, 112 L.Ed.2d 935 (1991).

the constitutional injury asserted; 2) the peculiar nature of the Tennessee grand jury selection process, in which the foreman was added as a thirteenth jury member, selected from the population at large; and 3) the investigative and administrative authority granted to the Tennessee grand jury foreman.[13] The State asserts that since in both the federal and the Panola County system, the foreman is selected from among the grand jurors already chosen rather than from the population at large, and since the duties of both the federal and Panola County foremen are arguably merely ministerial, the present case is analogous to *Hobby*.

This reasoning is flawed. The essential distinction between *Rose* and *Hobby* is the nature of the alleged injury. *Rose*, like the present case, involved a claim brought by members of a class allegedly excluded from service as grand jury foremen, who had suffered the injuries of stigmatization and prejudice associated with racial discrimination.[14] In *Hobby*, by contrast, a white male asserted that the exclusion of women and blacks from the position of grand jury foreman violated his right to fundamental fairness under the due process clause.[15] The *Hobby* Court therefore considered whether the selection process and role of the federal grand jury foreman implicated the petitioner's right to fundamental fairness. The Court found that because the foreman was appointed from a randomly chosen grand jury panel representing a fair cross-section of the community, and because that foreman's responsibilities were largely ministerial, even if discrimination existed in the selection of the foreman, such discrimination did not infringe upon the petitioner's due process rights.[16]

The remedy mandated in *Rose*, however, did not depend on any infringement of the petitioners' right to fundamental fairness, nor on whether the defendant was prejudiced in fact.[17] The injury to equal protection caused by racial discrimination in the selection of members of a grand jury "is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the processes of our courts."[18] This injury to society as a whole, as well as the stigmatization and prejudice directed against a distinct group, exists regardless of the extent of the grand jury foreman's authority or of the composition of the grand jury as a fair cross-section of the community, or their effect on the fundamental fairness of the judicial process. The due process analysis contained in *Hobby* is simply inapplicable to a claim of violation of equal protection through the discriminatory selection process of a grand jury foreman.

We must therefore consider Johnson's claim in accordance with the framework articulated in *Rose* and adopted by this court in *Guice v. Fortenberry*.[19] We note that the limitation announced in *Teague v. Lane*,[20] that new constitutional rules will not be applied retroactively on collateral review of final decisions,[21] poses no impediment to our ability to grant habeas corpus relief to the petitioner if warranted; this court has found discrimination in the selection of a grand jury foreman to justify vacating a conviction for the past ten years,[22] and *Rose* was decided in 1979, nearly three months before Johnson was indicted.

## V.

▮▮▮ To establish a prima facie case of discrimination in the selection of a grand

---

13. *Hobby*, 468 U.S. at 349, 104 S.Ct. at 3098.

14. *Id.* at 347, 104 S.Ct. at 3097.

15. *Id.*, 104 S.Ct. at 3098.

16. *Id.* at 345–46, 350, 104 S.Ct. at 3096–97, 3099.

17. *Rose*, 443 U.S. at 556, 99 S.Ct. at 3000; *Guice*, 661 F.2d at 499.

18. *Id.*, quoting *Ballard v. United States*, 329 U.S. 187, 195, 67 S.Ct. 261, 265, 91 L.Ed. 181 (1946).

19. 661 F.2d at 496.

20. 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

21. *Id.* at 310, 109 S.Ct. at 1075.

22. *Guice*, 661 F.2d at 499.

jury foreman, a petitioner must demonstrate: 1) that the group against whom discrimination is asserted is a distinct class, singled out for different treatment; 2) the degree of underrepresentation by comparing the proportion of the group in the total population to the proportion called to serve as foremen over a significant period of time; and 3) that the selection procedure is susceptible to abuse or is not racially neutral.[23] This prima facie case may then be rebutted by evidence that objective, racially neutral criteria were used in the selection process.[24]

Johnson has unquestionably satisfied the first and third prongs of this test. Blacks comprise a distinct class capable of being singled out for different treatment under the laws.[25] The grand-jury-foreman-selection process in Panola County, in which the circuit judge appoints the foreman on the basis of his own subjective criteria after having access to data concerning the race and sex of the grand jury panel members, is subject to abuse.[26]

The State contends, however, that Johnson cannot establish a prima facie case of discrimination because he cannot prove underrepresentation "over a significant period of time." The Mississippi Supreme Court found that the relevant time period for consideration lasted from 1975–79, beginning with the implementation of the Mississippi Jury Selection Act,[27] and that this was insufficient to constitute a "significant" period of time.[28] Although the United States Magistrate determined the relevant time period to be 1964–79, the State argues that in habeas proceedings we are bound by the conclusions of the state court,

as factual determinations, unless clearly erroneous.[29] We do not agree that designation of the relevant time period is a purely factual determination. Rulings of law or mixed rulings of law and fact are subject to *de novo* review in habeas proceedings.[30]

■ The significant period of time for purposes of determining a federal constitutional violation is not limited, as the Mississippi Supreme Court held, to the period after passage of the Mississippi Jury Selection Act, which was a state mandate directing a non-discriminatory random selection process for grand and petit jurors.[31] The Panola County court could not erase its earlier failure to adhere to federal constitutional requirements merely by following state law—and thus complying with both federal and state requirements—for five years. Nor is it relevant that the Jury Selection Act is indicative of "great strides" in Mississippi in eradicating racial discrimination in the selection of juries, as the Mississippi Supreme Court contends.[32] As we have previously observed with regard to similar statutory reforms in Louisiana, to accept the rationale of the Mississippi Supreme Court would be to hold that Johnson has failed to state a prima facie case "simply because [Mississippi] has eliminated one admittedly discriminatory step in its foreman-selection process."[33] The plain facts are that between 1959 and 1975, 32 grand jury foremen were appointed in Panola County, and not one of them was black. The discrimination against black foremen continued through 1979, by which time 42 white foremen had been chosen.

**23.** *Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977); *Rose,* 443 U.S. at 565, 99 S.Ct. at 3005; *Guice,* 661 F.2d at 499.

**24.** *Guice v. Fortenberry,* 722 F.2d 276, 281 (5th Cir.1984).

**25.** *Rose,* 443 U.S. at 565, 99 S.Ct. at 3005.

**26.** *See Guice,* 661 F.2d at 503.

**27.** Miss.Code Ann. §§ 13–5–2 *et seq.* (Supp. 1990).

**28.** *Johnson v. State,* 404 So.2d at 555.

**29.** 28 U.S.C. § 2254(d) (1988); *Sumner v. Mata,* 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981).

**30.** *Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982).

**31.** *Johnson v. State,* 404 So.2d at 556; *see also Herring v. State,* 374 So.2d 784, 786–87 (Miss. 1979).

**32.** *Johnson v. State,* 404 So.2d at 556.

**33.** *Guice,* 722 F.2d at 279–80.

While "statistics are not, of course, the whole answer, ... nothing is as emphatic as zero." [34] Johnson has demonstrated underrepresentation of blacks as grand jury foremen in Panola County over a significant period of time.

We therefore find that Johnson has established a prima facie case of racial discrimination in the selection process of the grand jury foreman in Panola County. We also find that the State failed to rebut this prima facie case. The Supreme Court has held that "affirmations of good faith in making individual selections are insufficient to dispel a prima facie case of systematic exclusion." [35] This court has required that testimony rebutting a prima facie case of discrimination establish the use of objective, racially neutral selection procedures.[36] The rebuttal testimony offered by the State, by contrast, merely indicates that the judges in Panola County never stated or indicated to the circuit clerk that they selected grand jury foremen based on their race; the testimony neither denies the use of racial criteria nor advances any other objective non-discriminatory criteria used by the judges. This evidence is inadequate to rebut the presumption of discrimination established by petitioner's prima facie case.

We conclude that the grand jury selection process in Panola County violated Johnson's right to equal protection under the Fourteenth Amendment. In accordance with the mandates of *Rose v. Mitchell* and *Guice v. Fortenberry*, his conviction must be vacated. The State may choose to reindict him for the same crime.[37]

For the foregoing reasons, we REVERSE and REMAND to the district court with instructions to issue the writ of habeas corpus unless, within a reasonable time to be designated by the district court, the State should again indict and try Johnson.

---

**34.** *Guice,* 661 F.2d at 505, *quoting United States v. Hinds County School Board,* 417 F.2d 852, 858 (5th Cir.1969).

**35.** *Alexander v. Louisiana,* 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972).

**36.** *Guice,* 722 F.2d at 281.

**37.** *Rose,* 443 U.S. at 558, 99 S.Ct. at 3001; *Guice,* 722 F.2d at 282.