United States Court of Appeals,

Fifth Circuit.

No. 93-3262.

Nolan JAMES, Petitioner-Appellee,

v.

John WHITLEY, Warden, Louisiana State Penitentiary, and Richard
P. Ieyoub, Attorney General, State of Louisiana, Respondents-
Appellants.

Dec. 9, 1994.

Appeal from the United States District Court for the Middle
District of Louisiana.

Before WISDOM, KING, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Respondents John Whitley, Warden of the Louisiana State
Penitentiary, and Richard P. Ieyoub, Attorney General of the State
of Louisiana (collectively "the State"), appeal the district
court's grant of a writ of habeas corpus to petitioner Nolan James.
James presented eight claims in his federal habeas petition. The
district court granted relief on James's equal protection claim,
which alleged discrimination in the selection of the foreman of the
grand jury that indicted James. We reverse the district court's
grant of the writ and remand the case for consideration of James's
other claims.

FACTS

An Ascension Parish grand jury indicted James for first degree
murder in 1979. James raised his equal protection claim in a
pretrial motion to quash the indictment. The court heard testimony
from two witnesses, both of whom were judges of the Twenty-Third

Judicial District, which includes Ascension Parish. The judges testified that they had impanelled some grand juries in the Parish, and that they did not recall ever having appointed a black as a grand jury foreman in Ascension Parish. At a later hearing, the judge who presided over James's case, Judge Becnel, stated on the record that he did not recall any black grand jury foreman in Ascension Parish.

Judge Becnel denied the pretrial motion to quash the indictment. A jury subsequently found James guilty of second degree murder, and James was sentenced to life in prison. James appealed his conviction to the Louisiana Court of Appeal for the First Circuit, where he urged 28 assignments of error. The court reconsidered his equal protection claim and determined that James had failed to prove the degree of under-representation of blacks as grand jury foremen in Ascension Parish. *State v. James,* 459 So.2d 1299, 1308 (La.Ct.App. 1st Cir.1984), *writ denied,* 463 So.2d 600 (La.1985). In reaching its conclusion, the court found that James failed to establish "the number of grand juries which have been convened, nor the number of foreman [sic] appointed." *Id.*

James later filed his federal habeas petition, which the district court referred to a magistrate judge. The magistrate judge revisited the equal protection issue and recommended that the conviction be overturned. In his review of the First Circuit's decision, the magistrate judge found that the state court's finding, if a factual finding, was not fairly supported by the record. The magistrate judge then determined that James had proved

2

a prima facie case for equal protection, and that the state had not rebutted his claim. The district court agreed with the magistrate's recommendation and granted James a writ of habeas corpus. The State appeals.

DISCUSSION

We review the district court's legal determinations de novo. *Johnson v. Puckett,* 929 F.2d 1067, 1070 (5th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991). The State raises three issues on appeal: (1) whether the district court's conclusion that James had satisfied his prima facie requirements was erroneous; (2) whether reversal of his conviction is the proper remedy; and (3) whether equal protection claims concerning the selection of grand jury foremen are cognizable in habeas corpus proceedings.[1]

To make out a prima facie case for discrimination in the selection of grand jury foremen, James must prove: (1) the group to which he belongs is a recognizable, distinct class that receives different treatment under the laws as written or applied; (2) the degree of underrepresentation, by comparing the proportion of the group in the total population with the proportion of the group called to serve as grand jury foreman over a significant period of

---

[1]The State realizes that our precedent forecloses our determinations on its last two issues. *See Johnson,* 929 F.2d at 1071; *Guice v. Fortenberry,* 661 F.2d 496, 498-99 (Former 5th Cir. Nov. 1981) (en banc) (*Guice I* ). The State hopes that, should we affirm the district court, we would reconsider these issues en banc. Because we reverse the district court's conclusion as to the equal protection claim, we do not reach the State's other issues.

3

time; and (3) that the selection procedure is susceptible to abuse or is not racially neutral. *Rose v. Mitchell,* 443 U.S. 545, 565, 99 S.Ct. 2993, 3005, 61 L.Ed.2d 739 (1979) (quoting *Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977)). The Louisiana First Circuit denied James's equal protection claim because he failed to prove the second element of his claim. At oral argument before us, the state conceded that James had proved the first and third elements. Thus, our inquiry concerns only the degree of underrepresentation.

In federal habeas proceedings, federal courts generally accord state court findings of fact a presumption of correctness. 28 U.S.C. § 2254(d) (1988). Eight exceptions exist to this presumption. One of the exceptions is if the record does not fairly support the finding. *Id.* § 2254(d)(8). If the record as a whole does not fairly support the finding, the finding is not entitled to the presumption of correctness. *Armstead v. Scott,* 37 F.3d 202, 206 (5th Cir.1994). If the record does fairly support the finding, the presumption of correctness applies and the petitioner must prove by clear and convincing evidence that the finding is erroneous. *Id.* at 206; *Williams v. Scott,* 35 F.3d 159, 161 (5th Cir.1994).

The district court erroneously determined that the record as a whole did not fairly support the finding of the Louisiana First Circuit that James did not establish the number of grand juries convened in Ascension Parish between 1965 and 1979 nor the number of foremen appointed. "[Q]uestions of fact that underlie the

4

ultimate conclusion *are* governed by the statutory presumption." *Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982) (per curiam). In reaching his conclusion, the magistrate judge compared the statistical information available in this case to *Guice I* and *Johnson.* When the issue is whether § 2254(d)(8) applies, however, the appropriate analysis is whether the record fairly supports the finding, not whether the record shows sufficient statistical information to establish the degree of underrepresentation.[2]

The determination of whether the record fairly supports a state court finding requires a high measure of deference. *Rushen v. Spain,* 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983). Mere disagreement with a state court finding does not entitle a federal court to overturn it. *Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 849-50, 74 L.Ed.2d 646 (1983).

The First Circuit found that James had failed to prove the number of grand jury foremen appointed between 1965 and 1979. "Absent such evidence, it is difficult to say that the number of Negroes appointed foreman, even if zero, is statistically so significant as to make out a case of discrimination under the "rule

---

[2]In *Guice I,* the presumption of correctness did not apply because the state court did not resolve the merits of the factual dispute. 661 F.2d at 506-07. The *Johnson* court disagreed with the state court's mixed ruling of law and fact, to which the presumption does not apply. 929 F.2d at 1072-72. The Supreme Court in *Rose* recognized that the § 2254(d) presumption could apply to the statistics underlying the degree of underrepresentation. 443 U.S. at 574 n. 13, 99 S.Ct. at 3009 n. 3. Nevertheless, the presumption did not apply in *Rose* because the state court did not resolve the merits of the factual dispute. *Id.*

5

of exclusion.' " *Rose,* 443 U.S. at 571, 99 S.Ct. at 3008. On the number of grand jury foremen selected, James's evidence is purely inferential. Louisiana law requires that a grand jury be convened in Ascension Parish twice a year. La.Code Crim.Proc.Ann. art. 414 (West 1991). In *Guice I,* we noted that this statute provides inferential, not positive, evidence of the number of grand jury foremen actually selected during the relevant period. 661 F.2d at 504. James presents no positive evidence of the number of grand jury foremen appointed.[3]

The absence of positive proof in the record of the number of grand jury foremen appointed means that record fairly supports the state court finding. An ambiguous record provides fair support for a state court finding. *Wainwright v. Goode,* 464 U.S. 78, 85, 104 S.Ct. 378, 382-83, 78 L.Ed.2d 187 (1983). Because the evidence put forth by James is inferential, the state court could reach the opposite inference and find that he had not proven the number of grand jury foremen appointed. Under § 2254(d)(8), we must respect that finding. We determine that the record fairly supports the First Circuit's factual finding.

Because the record fairly supports the state court finding, the presumption of correctness applies. Without positive proof of the number of grand juries convened and foremen appointed in

---

[3]The testimony of the judges goes toward the number of grand juries convened, not the number of grand jury foremen appointed. In contrast, in *Guice v. Fortenberry,* 722 F.2d 276, 278 (5th Cir.1984) (*Guice II* ), the chief deputy clerk of court testified that, to her personal knowledge, 31 grand jury foremen were appointed during the relevant period.

Ascension Parish between 1965 and 1979, James cannot show the degree of underrepresentation required by *Rose*. The Supreme Court emphasized the importance of such statistics in proving an equal protection claim. *Rose,* 443 U.S. at 574, 99 S.Ct. at 3009 ("We decline to overlook so fundamental a defect in respondent's case."). We conclude that James has failed to prove the degree of underrepresentation required to establish an equal protection claim.

CONCLUSION

The trial court's grant to James of a writ of habeas corpus is REVERSED, and the case is REMANDED to consider the other claims in James's petition.