PATTERSON, Judge.
Delester Lee appeals from his second conviction for the murder of Howard Stabler, and his sentence to life imprisonment. In Lee v. State, 631 So.2d 1059 (Ala.Cr.App.1993), this court reversed Lee’s first conviction on this charge. In the instant appeal, Lee raises five issues for review.
I.
Lee contends, as in his prior appeal, that the trial court selected the grand jury foreperson in a racially discriminatory manner. We reversed his prior conviction on these grounds, holding that Lee presented unre-butted evidence regarding the three criteria set out in Johnson v. Puckett, 929 F.2d 1067 (5th Cir.), cert. denied, 502 U.S. 898, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991), as follows: 1) that Lee is a member of a distinct class (i.e., a black man), singled out for different treatment, 2) that over a significant period of time in Monroe County, the frequency with which black people were selected as grand jury forepersons was disproportionately low when compared to the percentage of those eligible who were black, and 3) that the procedure for selection of the grand jury foreperson in Monroe County was subject to abuse. Lee was indicted for capital murder by a different grand jury in Spring, 1994.
We consider Lee’s challenge to the selection of this grand jury foreperson in light of the three factors in Johnson. We hold that on this appeal, Lee has failed show “the degree of underrepresentation [of blacks].... called to serve as foremen,” and has, therefore, failed to meet the second prong set out in Johnson, supra at 1072.
In determining to what degree, if any, a class has been underrepresented with respect to the second prong in Johnson, we must consider what statistics are truly relevant to the inquiry. It is axiomatic that no court need consider irrelevant evidence. The facts underlying our court’s previous opinions in Lee and Locke v. State, 631 So.2d 1062 (Ala.Cr.App.1993), presented such clear pri-ma facie cases of discrimination, that it was not necessary at that time to draw fine lines of relevance regarding which statistics were probative of the issue of whether the grand jury foreperson selection process was racially discriminatory.[1] In this case, however, there *35 is no glaring prima facie case. Therefore, we must distinguish those figures which are in fact probative of this issue. We are persuaded by the concurring opinion in United States v. Sneed, 729 F.2d 1333 (11th Cir. 1984), in which Judge Robert Vance wrote:
“ ‘[Defendants ... may challenge only improprieties affecting the particular grand jury which indicted them.’ United States v. Bearden, 659 F.2d 590, 601 (5th Cir. Unit B 1981) (emphasis in original), cert denied sub nom. Northside Associates v. United States, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982). Thus to obtain relief from his conviction through an equal protection challenge to the selection of grand jury forepersons, a defendant must prove that unconstitutional discrimination affected the appointment of the foreperson serving on the grand jury that indicted him. See Rose v. Mitchell, 443 U.S. 545, 551, 99 S.Ct. 2993, 2997, 61 L.Ed.2d 739 (1979). Statistical analysis is simply a means of shouldering this burden, and the statistics employed must be tailored to that end. When the judges in a given unit do not select forepersons independently on the basis of individually established criteria, the decisions of all the group’s members may fairly be considered together because there is nothing to distinguish the selection process of one from that of any other: the judges’ decisions are, in essence, fungible. On the other hand, when a single judge makes foreperson appointments completely isolated from his colleagues and on the basis of separately developed criteria, the selections of other judges are simply irrelevant to the defendant’s claim of discrimination. In the latter situation there is no connection between the decisions of the one and the decisions of the others that can serve as a basis for viewing the entity allegedly discriminating against the defendant as the group rather than the individual.... I would hold that when a judge appoints grand jury forepersons independently of his colleagues, a defendant who challenges his conviction on the grounds of unconstitutional discrimination in the selection of the foreperson of the grand jury that indicted him must demonstrate a pattern of discrimination by the empaneling judge.”
Id., at 1337-38. We are convinced that this is the better rule.[2] Having searched and found no authority to preclude us, we adopt the rule proposed by Judge Vance as the law in Alabama.[3]
At the hearing on Lee’s motion to quash the indictment, the trial judge who empaneled the grand jury and selected the grand jury foreperson testified that he sought to select grand jury forepersons who had “dis *36 cernment.” With this end in mind, his method was to consider the candidates’ answers on voir dire, their reputations in the community, and their overall demeanors. He would listen to the district attorney’s suggestions; however, he was not bound to accept any of those suggestions and sometimes rejected them. He further testified that he was unaware of his predecessor’s method of selecting the grand jury foreperson. This testimony shows that this empaneling judge selects the grand jury foreperson from the eligible pool using a selection process entirely independent from his colleagues. Therefore, only this particular judge’s pattern of grand jury foreperson selection is relevant to whether the foreperson of the grand jury that indicted Lee was selected by a racially discriminatory process.
The hearing on Lee’s motion to quash the indictment showed that the grand jury’s empaneling judge took office in 1989, and since then had selected seven black grand jury forepersons. This figure represents 40% of all grand jury forepersons selected by this judge (apparently, this judge has empaneled 16 grand juries since he took the bench in 1989). Lee has failed to provide any figures regarding the demographies of the population eligible for service as grand jury foreperson in 1994. A meaningful showing of statistical underrepresentation in the selection of the grand jury foreperson must be calculated using the percentage of those presumably eligible for jury duty who are members of the class at issue.[4] Cf Wooten v. State, 361 So.2d 1192,1194 (Ala.Cr.App.1978) (holding no prima facie case of discrimination in forming the jury venire where “[t]here [was] no legal evidence.... to even find a statistical disparity between the number of blacks and youths •presumed eligible for jury duty and the number actually included in the jury roll.” (emphasis added)); Harris v. State, 352 So.2d 460, 471 (Ala.Cr.App.1976) (quoting Singleton v. Estelle, 492 F.2d 671, 677 (5th Cir.1974) (“ ‘The threshold requirement for establishment of a prima facie case of racial discrimination in jury selection is a showing of marked disparity between the percentage of Negroes among persons putatively qualified to serve as jurors and the percentage of Negroes actually on the jury lists in the case in question.’”) (emphasis added)).
As of Lee’s 1990 indictment, 30% of the Monroe County population eligible for jury duty was black. Again, 40% of the empaneling judge’s grand jury forepersons have been black. If we were to assume no material demographic change between 1990 and 1994, then we would find that the empaneling judge’s “independently established criteria” resulted in Lee’s class being overrepresented by 25% in the selections of grand jury forepersons. It would follow that no prima facie ease of discrimination had been shown. However, we cannot assume that the demographics of the eligible population have remained unchanged in the intervening years, and Lee has failed to provide the trial court with updated figures reflecting the percentage of those eligible for service who were black. Therefore, we cannot find that blacks have been underrepresented during the empaneling judge’s term in office. Applying the new standard advocated by Judge Vance, we *37 hold that Lee has failed to present a prima facie case that the empaneling judge discriminated on the basis of race in selecting the foreperson of the grand jury that indicted him in this case.
Moreover, even under the more liberal analysis that this court implemented in reviewing Lee’s prior indictment, see Lee, supra, Lee has failed to present a prima facie case of discrimination. The new statistics reviewed above, combined with the older figures set out in Lee[5] indicate that from 1977 to 1994, eight black people served as grand jury foreperson in Monroe County, while as many as 44 grand jury forepersons were appointed in that county during that period. Thus, from 1977 to 1994, 18% of grand jury forepersons in Monroe County were black. If we were to consider as current, the 1990 figure that 30% of the people eligible for jury duty are black, then we would find that blacks were underrepresented by 40% in the selection of grand jury forepersons from 1977 to 1994.
When applying the rule of exclusion, courts have determined, on an ad hoc basis, what degree of statistical underrepresentation satisfies a prima facie case of discrimination. Compare Castaneda v. Partida, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) (finding a prima facie ease of discrimination, where Hispanics were underrepresented on the grand jury by 50.1%); Dixon v. Hopper, 407 F.Supp. 58 (M.D.Ga.1976) (finding a prima facie case of discrimination where females were underrepresented on the grand jury by 69.1% and on the petit jury by 46.4%; and where blacks were underrepresented on both the grand jury and the petit jury by 46.7%); with United States ex rel. Preston v. Ellingsworth, 408 F.Supp. 568 (D.C.Del.1975) (finding no prima facie case of discrimination where blacks were underrepresented on the petit jury by 32%). In view of these decisions, underrepresentation by 40% would present a close question of whether Lee had met his burden. However, because Lee failed to provide the necessary updated demographics of those eligible for jury duty, we cannot find, conclusively, that blacks have been underrepresented during this period by any certain percentile. Therefore, under either analysis, Lee has failed to present a prima facie case of racial discrimination in the selection of the foreperson of the grand jury that indicted him in 1994.
II.
As a separate issue, Lee contends that the grand jury foreperson selection process unconstitutionally discriminated against people between the ages of 19 and 30 years old. We know of no authority, and Lee refers us to none, indicating that this age group has been “singled out for different treatment” under the law. He has, therefore, failed to meet the first prong of Johnson.
Moreover, even assuming Lee could meet the first prong in Johnson he has failed to meet the second prong. Under the second prong in Johnson, Lee was required to show the degree to which actual grand jury foreperson selections have underrepresented those who were 19 to 30 years old and eligible for jury duty in Monroe County. Lee presented evidence, based upon the most recent census data available, that 16% of the population of Monroe County was 19 to 30 years old. However, he failed to show how many, if any, of those people were actually eligible for jury duty. Cf. Wooten, supra; Harris, supra. Lee has failed to present a prima facie case of age discrimination in the selection óf the grand jury foreperson.
III.
Lee’s contention that the trial court erred by denying his motion for change of venue is without merit. He has included in the record, several Monroe County news media reports of Howard Stabler’s murder and Lee’s two trials. Initially, Lee contends that this news coverage so saturated the community with inflammatory and prejudicial pub *38 licity, that we should presume that Lee’s right to a fair trial was prejudiced. The voir dire of the jury venire indicated that 42 members of the panel did not know the facts of the case. Three veniremembers who had heard of the case stated that they could base their verdict on the evidence presented at trial. Significantly, one of those three veniremembers stated that the pretrial publicity had persuaded her that Lee was probably not guilty. On these facts, we cannot find that the media coverage was presumptively prejudicial.
In the alternative, Lee contends that the jury voir dire shows that the media coverage resulted in actual prejudice in the minds of one or more jurors who decided the case. The record does not support this allegation. The jury voir dire revealed that 16 veniremembers were familiar with the facts of the case.[6] Of these 16 people, only three were not struck for cause from the panel. Of those three jurors, none indicated a fixed opinion of Lee’s guilt, and each stated that they could render a verdict based solely on the evidence presented at trial. After exercising all challenges for cause, the parties struck the petit jury from a panel of 45 veniremembers. Lee has failed to show that any member of the jury that convicted him was in any way influenced by pretrial publicity-
IV.
We reject Lee’s contention that the trial court erroneously denied his oral request to charge the jury that manslaughter is a lesser included offense of capital murder. On appeal, he argues that at trial, the prosecution presented inferences that Lee may have used alcohol or drugs on the night before the murder. Therefore, he contends, he was entitled to have the jury instructed that if they found that he was so intoxicated at the time he killed Stabler as to eliminate the element of intent, then he would be guflty of manslaughter. See Crosslin v. State, 446 So.2d 675 (Ala.Cr.App.1983). In his brief to this court, Lee has failed to point us to any evidence which would support a finding that he was intoxicated at the time he killed Stabler, and the record reveals none. The trial court properly denied this requested jury charge.
V.
Finally, Lee contends the trial court invited a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963), by denying his “Motion to Require Disclosure of Any and All Information Concerning Prospective Jurors Which May Be Favorable to the Defense.” In his brief to this court, Lee has not alleged that the prosecutor in fact withheld any information whatsoever which would be favorable to his defense. Further, nothing in the record indicates that the prosecutor withheld such information. We find no error in the trial court’s denial of this motion.
AFFIRMED.
All the Judges concur.

. In Lee v. State, 631 So.2d 1059 (Ala.Cr.App.1993), this court considered this claim in view of both the raw percentage of county population over 18 years of age that was black, and the *35 percentage of those actually eligible for jury duty that was black.

. The rule previously followed by this court in Lee, and Locke v. State, 631 So.2d 1062 (Ala.Cr.App.1993), would eventually yield one of two undesirable results: either to require the selection of grand jury forepersons at random and without discretion; or, in the alternative, to invite a similar challenge to every conviction in the state until enough grand jury forepersons have been selected to outweigh the statistical ballast of hundreds of antiquated selections with nothing more than a geographical relevance to the instant proceedings.

. See United States v. Sneed, 729 F.2d 1333, 1338-40 (1984) (noting that "although [the common law precedents] have utilized figures representing the selections of several judges, until now the issue has never been squarely decided by any binding authority,” and discussing those precedents in detail). Since Sneed, we know of no Alabama Supreme Court case or United States Supreme Court case deciding this issue.
The state argues that, under the law-of-the-case doctrine, Lee requires that we decide this issue adversely to Lee. That doctrine, however, applies only to rulings made within the same proceeding. The term ‘proceeding’ includes all stages of a criminal trial and appeal, from presentment of the case to the grand jury, through final disposition. State in Interest of J.S., 642 A.2d 430. Lee’s first indictment was quashed by this court. See Lee, supra. The case was subsequently presented to a different grand jury, from which this appeal arises. This appeal, therefore, should be construed to be part of a different proceeding than Lee. Moreover, the law-of-the-case doctrine “ 'controls the outcome only if the evidence on retrial or rehearing is substantially the same as that upon which the appellate ruling was based.’ " Hull v. State, 607 So.2d 369, 377, note 5 (Ala.Cr.App.1992) (quoting People v. Mattson, 50 Cal.3d 826, 849, 268 Cal.Rptr. 802, 818, 789 P.2d 983, 999, cert. denied, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 595 (1990)). The facts regarding this issue are not substantially the same as those in Lee. Therefore, the law-of-the-case doctrine does not apply.

. Eligibility for jury duty is statutorily conditioned on certain criteria. See § 12-16-60, Code of Alabama 1975. Therefore, the percentage of blacks who are eligible for jury duty will sometimes be less than the percentage of the raw population that is black and over 18 years of age. For example, Lee presented evidence that in 1990, blacks over the age of 18 comprised 35% of the raw population of Monroe County, but that blacks comprised only 30% of those eligible for jury duty. Because 15% of blacks over the age of 18 were disqualified from jury duty, and because their disqualification appears to have been constitutional, we believe that the relevant statistic for the purposes of this inquiry must be the percentage of blacks statutorily eligible for jury duty. Likewise, the percentage of the raw popu-lafion that is black and over 18 years of age is not relevant to this inquiry.
When the process for determining eligibility for jury duty is challenged as racially discriminatory, the percentage of the class as a portion of the raw population is a relevant statistic. Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967). However, Whitus is distinguished from this case. Lee does not challenge the criteria for eligibility for jury duty; rather, he challenges only the process selecting the grand jury foreperson from the pool of prospective grand jurors. As such, Lee has waived any challenge to process of empaneling the grand jury in Monroe County, and on the face of the record, that process appears to be constitutional.

. The statistics relied upon by this court in Lee, supra, were as follows: from 1977 to 1991, "only one black had been appointed foreman, even though blacks composed 30% of the county residents potentially available for jury duty, even though blacks composed 35% of the county population over the age of 18 years in 1990, and even though as many as 28 grand jury foremen may have been appointed during those 14 years.” Id., at 1061-62.

. Of these 16 jurors, only four stated that they had a fixed opinion of Lee's guilt. Each of those four were struck for cause.